# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT COURT OF MASSACHUSETTS

| | |
|---|---|
| JAMES FESCINA, Individually and On Behalf of All Others Similarly Situated, | : |
| | : |
| Plaintiff, | : Civil Action |
| | : No. 04-12309- JLT |
| vs. | : |
| | : |
| CVS CORPORATION, THOMAS M. RYAN, STANLEY P. GOLDSTEIN, EUGENE APPLEBAUM, W. DON CORNWELL, THOMAS P. GERRITY, MARIAN L. HEARD, WILLIAM H. JOYCE, TERRENCE MURRAY, SHELI Z. ROSENBERG, IVAN G. SEIDENBERG, DAVID RICKARD, ZENON P. LANKOWSKY, ROSEMARY MEDE, and UNKNOWN FIDUCIARY DEFENDANTS 1-100, | : |
| | : |
| Defendants. | : |

## MOTION AND MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR AN ORDER PRELIMINARILY APPROVING SETTLEMENT, CERTIFYING THE CLASS, AND SETTING A DATE AND TIME FOR THE FAIRNESS HEARING

Plaintiff, James Fescina ("Plaintiff"), by and through undersigned Plaintiff's Counsel, respectfully moves the Court for an Order: (i) granting preliminary approval of the Settlement of this litigation; (ii) granting preliminary certification of the proposed Class pursuant to Fed. R. Civ. P. 23(b)(1) and/or (b)(2); (iii) approving the forms for mailed and published notice of the Settlement; (iv) authorizing the mailing and publication of those notices; and (v) setting a date and time for the fairness hearing with respect to the proposed Settlement and the petition of Plaintiff's Counsel for an award of attorneys' fees, reimbursement of expenses, and of an incentive awards to the Plaintiff.

The proposed Settlement, in the amount of $3,000,000 in cash, payment of all notice and administration costs and expenses in connection with the Settlement, and imposition of governance changes at the Company, provides substantial benefits to the Plans and the entire Class, and removes the risk of delay and non-recovery, as well as the expense inherent in the instant complex ERISA litigation. For the reasons explained herein, Plaintiff respectfully requests that the Court grant his motion and preliminarily approve the proposed Settlement.

## I.    TERMS OF THE SETTLEMENT

The terms and conditions of the proposed Settlement are set forth in a Stipulation and Agreement of Settlement of ERISA Actions, dated July 1, 2005 (the "Settlement Agreement"), a true and correct copy of which filed simultaneously with this motion. The following summarizes the principal terms of the Settlement:

### A.    Scope of the Proposed Settlement

The proposed Settlement will completely resolve this ERISA class action, acting to dismiss all claims and defenses, and affecting all Parties to the Action.

### B.    Settlement Consideration

The settlement consideration provided pursuant to the proposed Settlement entails cash in the amount of $3,000,000, payment of all costs and expenses incurred in providing notice and administration of the Settlement, and governance changes, including the adoption of an ERISA Plan Committee Charter, setting forth specific responsibilities and duties for ERISA Plan administration by the ERISA Plan Committee.

2

### C.    Definition of the Class

The Settlement Agreement contemplates that the Court will certify the following Class under

Fed. R. Civ. P. 23(b)(1) and/or (b)(2):

> all Persons, other than persons who are named as Defendants in the Amended Complaint and their immediate family members, who were participants or beneficiaries under the ERISA Plans during any portion of the Class Period[1] and who held, purchased, acquired or had contributed CVS Stock in their plan account(s) at any time during the Class Period.

### D.    Plan of Allocation

The Settlement Agreement contemplates, subject to the Court's approval, that after payment

of Court approved fees and costs and incentive awards, the Net Settlement Fund will be paid to the

Plans and allocated to Plan participants in proportion to their individual losses occasioned by their

investment in CVS common stock in their 401(k) Plan accounts, and/or by their investments in CVS

preference shares in their CVS ESOP and Diversified ESOP Account (the "ESOPs"). Generally, for

the 401(k) Plan, the Loss is calculated based on the absolute decline in the value of your CVS

common stock during the Class Period, off-set by any sales of that stock you made during the Class

Period. For the ESOPs, the Loss is calculated based on the absolute decline in the value of your

CVS preference shares from the beginning of the Class Period until the termination date of your

account, off-set by the value of your sales on the termination date. Specifically, under this proposed

allocation, each participant's share would be calculated as follows:

(i)     For the CVS 401(k) Plan:

$$Loss = (A + B) - C, where$$

_____

[1]     The Class Period in the present ERISA action is from December 1, 2000 through October 30, 2001.

3

"A" represents the value of shares held at the beginning of the Class Period, minus the value of those shares at the end of the Class Period (or termination date if sold between June 15 and October 30, 2001);

"B" represents the value of all shares acquired during the Class Period, minus the value of those shares at the end of the Class Period (or termination date if sold between June 15 and October 30, 2001); and

"C" represents the value of all shares sold during the Class Period.

> (ii)    For the CVS ESOPs:

$$Loss = (A + B) - C, \text{ where}$$

"A" represents the value of shares held at the beginning of the Class Period;

"B" represents the value of all shares acquired during the Class Period; and

"C" represents the value of those shares upon the termination of the account(s) between June 15, 2001 and March 23, 2005.

In addition, to be eligible to recover under the proposed Settlement, class members must meet

certain prerequisites:

a.      For CVS common stock invested in the CVS 401(k) Plan, class members can only recover if they held such stock in their account at the beginning of, or acquired it during the Class Period.  Class members cannot recover for any common stock sold from their 401(k) Plan account from the beginning of the Class Period on December 1, 2000 through June 14, 2001.

b.      For CVS preference shares invested in the CVS ESOP, class members can only recover if: (i) they held such stock in their ESOP account at the beginning of, or acquired it during the Class Period; (ii) they terminated your ESOP account between June 15, 2001 and March 23, 2005.  If class members continue to participate in the CVS ESOP after March 23, 2005, they are not eligible to recover under the proposed Settlement.

A detailed description of the Plan of Allocation proposed under the Settlement, and all

prerequisites for class member eligibility to recover are set forth at Section 6 of the Settlement

Agreement.

4

### E.    Released Claims

Generally, the Released Claims, as defined at paragraph 3.29 of the Settlement Agreement, are the claims asserted in this litigation which would be barred by res judicata if litigated fully to a conclusion.

### F.    Notice

Attached as Exhibit C to the Settlement Agreement is a proposed form of Preliminary Approval Order, preliminarily approving of the Settlement and setting forth the forms and procedures for providing notice to the Class, conditionally certifying the Plaintiff as the representative of the certified Class and Plaintiff's Counsel as counsel to the Class, establishing a procedure for members of the Class to follow in order to object to the proposed Settlement, and setting a date for a hearing on the approval of the proposed Settlement.  The proposed form of Preliminary Approval Order provides for the following forms of notice:

• A Notice of Pendency of Class Action, Proposed Settlement and Hearing ("Individual Notice") (Exhibit A to the Settlement Agreement), to be mailed to the last known address of all parties and class members; and

• A Publication Notice (Exhibit B to the Settlement Agreement), to appear in *The Wall Street Journal*, or other national publication mutually agreed upon by Plaintiff's Counsel and Defendants's Counsel.

### G.    Proposed Schedule of Settlement Proceedings

If the Court preliminarily approves the Settlement, Plaintiff's Counsel propose the following schedule for settlement proceedings, tracking wherever possible, including as to the date of the final

5

settlement hearing, the same schedule previously approved by this Court in the related Securities and Derivative Actions:

• Mailing of the Individual Notice to identified class members: not later than two weeks after entry of the Preliminary Order.

• Deadline for filing and serving objections to the Settlement, the Plan of Allocation, or motion for award of attorneys' fees and reimbursement of expenses: August 24, 2005, two weeks prior to the date for the Settlement Fairness Hearing.

• Settlement Fairness Hearing: September 7, 2005.

## II.     THE SETTLEMENT MEETS THE JUDICIAL STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)

Although the procedure for approval of a class action settlement is not specifically delineated in Fed. R. Civ. P. 23, Rule, Rule 23(e) requires judicial approval of any compromise of claims brought on a class basis. Approval of proposed settlements of class actions is a matter of broad discretion of the district court. *See e.g., City P'shp Co. v. Atlantic Acquisition Ltd. P'shp.*, 100 F.3d 1041,1044 (1st Cir. 1996)("Great deference is given to the trial court [in approving class action settlements].") The district court's discretion, however, is "restrained by 'the clear policy in favor of encouraging settlements'." *Durrett v. Housing Authority of Providence*, 896 F.2d 600, 604 (1st Cir. 1990).

A two-step procedure for consideration of proposed settlements of class actions is set forth and approved in the *Federal Judicial Center's Manual for Complex Litigation* § 21.632, at 414 (4th ed. 2004). This procedure is universally followed by federal courts considering class action settlements. *See, e.g., McNamara v. Bre-X Minerals, Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002).

6

At the first stage, the Court must determine whether the proposed settlement falls within the range of possible approval.  *Id.*  If it does, the class should be notified and a fairness hearing scheduled, so the second stage, the final fairness hearing, can be held.  *Id.*

As is the case with final approval, the Court has wide discretion in making the first-stage determination.  *Pettway v. American Cast Iron Pipe Co.*, 576 F. 2d 1157, 1214 (5th Cir. 1978).  "Because a settlement may compromise the rights and interests of Class members, the procedural requirements for approving a settlement and the substantive rules governing the exercise of a trial judge's discretion are of crucial importance."  *Pettway*, 576 F. 2d at 1214 n. 69.  The Supreme Court has cautioned, however, that in reviewing a proposed class action settlement, a Court should "not decide the merits of the case or resolve unsettled legal questions."  *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981); *see also Cotton v. Hinton*, 559 F. 2d 1326, 1330 (5th Cir. 1977).  Because the object of settlement is to avoid, not confront, the determination of contested issues, the approval process should not be converted into an abbreviated trial on the merits.  *Cotton*, 529 F.2d at 1330; *Pettway*, 576 F. 2d at 1214 n.69.

With these criteria in mind, federal courts have found:

> Where the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted.

*In re NASDAQ Market-Makers Antitrust Litig.,* 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

A.    **Consideration of Final Approval Criteria**
      **Supports Preliminary Approval**

The standard for reviewing a proposed settlement of a class action, as reaffirmed just last month by this Court, is whether the proposed settlement is "fair, adequate and reasonable" and "untainted by collusion." *In re Lupron Marketing and Sales Practices Litig.*, 2005 WL 1140553 at *16 (D. Mass. May 12, 2005). "When sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement." *Id.*

It has long been settled that "the law favors class action settlements." *Id.* at *11. *See also In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation."); *Eichenholtz v. Brennan*, 52 F.3d 478, 486 (3rd Cir. 1995)("In general, the settlement of complex litigation before trial is favored by the federal courts."); *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1314 n.16 (3d Cir. 1993) (where a settlement is reached on terms agreeable to all parties, it is to be encouraged). There is a strong public interest in the settlement of any complex law suit. *U.S. v. Comunidades Unidas Contra La Contaminacion*, 204 F. 3d 275, 280 (1st Cir. 2000); *see also Cotton*, 559 F. 2d at 1331. As a consequence of this strong public interest, the First Circuit has held that settlement agreements "will be upheld wherever possible because they are a means of amicably resolving doubts and preventing lawsuits," *Hotel Holiday Inn de Isla Verde v. N.L.R.B.*, 723 F. 2d 169, 173  n.1 (1st Cir. 1983), and that "a district court, in reviewing a settlement proposal, need not engage in a trial of the merits, for the purpose of settlement is precisely to avoid such a trial." *Greenspun v. Bogan*, 492 F. 2d 375, 381 (1st Cir. 1974).  *See also In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d

283, 317 (3d Cir. 1998); *Karcich v. Stuart (In re Ikon Office Solutions, Inc., Sec. Litig.)*, 191 F.R.D. 166, 179 (E.D. Pa. 2000) (Katz, J.).

When examined under these applicable criteria, this Settlement is an excellent result for the Class. This is particularly true where, as here, experienced counsel have negotiated a settlement at arm's length. As such, a strong presumption is created that the compromise is fair and reasonable. *Rolland v. Celucci*, 191 F.R.D. 3, 6 (D. Mass. 2000). Courts have recognized a reliance on the judgment of competent counsel, often recognized as the "linchpin" of an adequate settlement. *See, e.g., Reed v. General Motors Corp.*, 703 F. 2d at 175. *See also Lachance v. Harrington*, 965 F. Supp. 630, 638 (E.D. Pa. 1997) (Yohn, J.) (stating that courts should "give credence to the estimation of the probability of success proffered by class counsel"). Thus, if experienced counsel determine that a settlement is in the class's best interests, "the attorney's views must be accorded great weight." *Pettway*, 576 F. 2d 1216. Generally, the Court should avoid substituting its judgment for that of counsel who negotiated the settlement, and approve the settlement. *See, e.g., Fisher Bros. v. Cambridge-Lee Industries, Inc.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985); *Sommers v. Abraham Lincoln Fed. Sav. & Loan Ass'n*, 79 F.R.D. 571, 576 (E.D. Pa. 1978).

As demonstrated below, application of the First Circuit's fairness test further warrants preliminary approval of the proposed Settlement here.

### B.    The First Circuit's Test of Fairness

Once satisfied that counsel adequately represented the Class and has bargained for the proposed settlement in good faith, the only question for the Court to determine "is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval." *McNary v. America Sav. & Loan Ass'n*, 76 F.R.D. 644, 649 (N.D. Tex 1977)(citations omitted). While there

is no "single inflexible litmus test" in the First Circuit for analyzing fairness, *Rolland*, 191 F.R.D. at 8, the First Circuit often looks to eight factors to analyze whether a settlement should be given final approval, six of which are relevant for preliminary approval in this case:

(1)    Plaintiff's likelihood of success on the merits;

(2)    amount and nature of discovery or evidence;

(3)    actual settlement terms and conditions;

(4)    recommendation and experience of counsel;

(5)    future expense and likely duration of litigation;

(6)    recommendation of neutral parties, if any;

(7)    number and nature of objections; and

(8)    presence of good faith and absence of collusion.

*Rolland*, 191 F.R.D. at 8. Consideration of these criteria demonstrates that the proposed Settlement falls squarely within the range of possible final approval, and is therefore fair, reasonable and adequate under the circumstances. As such, the proposed Settlement fully merits this Court's preliminary approval.

### 1.    Plaintiff's Likelihood of Success on the Merits

"As an initial matter, the Court is required to judge the reasonableness of the proposed settlement by evaluating the probable outcome of the litigation and weighing the remedies the class could secure from the settlement against the probable cost of continued litigation." *Id.* at 9. While Plaintiff's Counsel are optimistic about their ultimate success should this matter proceed in litigation to trial, there are clear risks inherent in the litigation of any action with numerous hotly contested issues, especially complex class actions such as the instant case. Defendants deny each of the claims

and allegations of wrongdoing alleged in the Amended Complaint, and deny that Plaintiff, the Class and the Plans are entitled to relief of any kind. At best, success on the merits of this litigation would have been highly contingent and years away. Indeed, a settlement provides the only safe vehicle by which Plaintiff's Counsel can ensure real relief for losses suffered by class members attributable to Defendants' conduct during the Class Period. The significant risks of proving liability further demonstrate that the Settlement was a good result for the Class,

Courts have long recognized that even where liability is strong, the complexities and uncertainties of litigation often warrant the approval of a settlement. As the court noted in *State of West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970):

> It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced. Merely by way of example, two instances in this Court may be cited where offers of settlement were rejected by some Plaintiff and were disapproved by this Court. The trial in each case then resulted unfavorably for Plaintiff; in one case they recovered nothing and in the other they recovered less than the amount which had been offered in settlement.

Even if the Class were to successfully establish Defendants' liability, the Plaintiff would have still have been forced to meet met substantial challenges in attempting to prove damages. The presentation of damage testimony is a complex matter. Proof of market causation and damages would require expert testimony to present these issues to the jury and, thus, as with the liability issues, would likely involve a battle of damage experts. Added to this risk is the fact that, before any valuation model may be presented to a jury, the Court would first have to determine that it is admissible evidence. Only then may a jury determine which model is more accurate. This task has become riskier for the Plaintiff in light of the Supreme Court's decision in *Daubert v. Merrell Dow*

*Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), which was interpreted by Judge Gettleman of the

Northern District of Illinois as requiring him to fully reject the testimony of plaintiffs' damages

expert with respect to the calculation of aggregate damages in that case. *Kaufman v. Motorola Inc.*,

2000 U.S. Dist. LEXIS 14627 (N.D. Ill., Sept. 19, 2000).[2]

       In this Action, damages would have been aggressively contested at trial, and the Class'

recovery, even assuming they prevailed on the liability issue, is speculative.[3]  While Plaintiff's

Counsel believe that convincing expert testimony could be provided on the damages question and

a judgment could ultimately be obtained for the full amount of damages available under the law, it

is certainly possible that, in the unavoidable "battle of experts," a jury might disagree with the

position of the Class.  *See, e.g., United States v. 412.93 Acres of Land*, 455 F.2d 1242, 1247 (3d Cir.

1972) ("The jury . . . is under no obligation to accept as completely true the testimony of any expert

witness.  It may adopt as much of the testimony as appears sound, reject all of it, or adopt all of it.");

*In re Greenwich Pharm. Sec. Litig.*, [1995 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 98,744, 1995

U.S. Dist. LEXIS 5717 at *11-12 (E.D. Pa. Apr. 25, 1995) (Newcomer, J.) ("Given these divergent

[damage] theories [of plaintiffs and defendants], it is impossible to predict how the jury would react

. . . .  This unpredictability is avoided by the proposed settlement, which provides the class with a

meaningful percentage of the recovery that might realistically be obtained through trial.").   Thus,

---

       [2]      Although Plaintiff's Counsel believe that the facts and circumstances of the damage model used in *Kaufman* would be limited to that case alone, there is no certainty that the findings of *Kaufman* might not be extended to other actions, including the present one.  Even accepting that the Plaintiff could satisfy the Court on this admissibility issue, the proper measure of damages would still be a question for the jury to determine after listening to conflicting expert testimony.

       [3]      Of course, decisions concerning the inevitable post-trial motions and appeals could also negatively impact the scope of recovery by the Class.

given the uncertainty behind proving liability and damages, Plaintiff will have no better opportunity to direct and control the result of this litigation than pursuant to this Settlement Agreement, and the Settlement therefore should be approved.

### 2.    Amount and Nature of Discovery

"[T]he stage of the proceedings at which settlement is reached is important because it indicates how fully the district court and counsel are able to evaluate the merits of Plaintiffs' claims." *Id.* at 10.  The proposed Settlement was reached after thorough investigation into Plaintiff's claims, the underlying events and transactions alleged in the Amended Complaint, and the operation and administration of the Plans.  Plaintiff's Counsel have also reviewed thousands of pages of directly relevant documents produced by Defendants in connection with the Summary Judgment motion in the related securities action, as well as documents obtained from public sources and the files of Plaintiff.  Additionally, Plaintiff's Counsel have consulted with experts and made a thorough study of the legal principles applicable to the actual and potential claims of the Plaintiff, the Plans and the Class.

The parties agreed in principle to settle this case only following careful review of this production, when both sides were in an excellent position to evaluate the strengths and weaknesses of each other's case.  A settlement arrived at following the thorough assessment of underlying documentation, as is the case here, is entitled to a strong presumption of reasonableness and adequacy.  The issues in the present case are well-developed.  Plaintiff's Counsel have carefully researched the relevant law, have a "full understanding of the legal and factual issues surrounding this case," *Manchaca v. Chater*, 927 F. Supp. 962, 967 (E.D. Tex. 1996), and are in an ideal position to evaluate the merits of their claims.  Nothing more is required.  Having completed a thorough

investigation in order to properly evaluate their case, Plaintiff's Counsel strongly submit that the proposed Settlement is fair, adequate and in the best interests of the Class.

### 3.    Actual Settlement Terms and Conditions

As detailed above, the Settlement Fund created totals $3,000,000. Such a sizeable fund is more than reasonable under the circumstances. In addition, the proposed Settlement also provides for important governance changes involving the administration of CVS's ERISA Plans, and requires CVS to pay all notice and administration costs and expenses in connection with the Settlement..

To assess the reasonableness of a proposed settlement seeking monetary relief, "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tanks Prods. Liab. Litig.*, 55 F. 3d 768, 806 (3d Cir. 1995)(citing *Manual for Complex Litigation (Second)* §30.44 (1985)). Here, while the amount of the Settlement Fund is fixed ($3 million, plus interest), the amount Plaintiff might otherwise recover against the Defendants should the matter continue in litigation is uncertain.

The maximum potential damages faced by Defendants are substantial. Plaintiff asserts that the participants' retirement savings should not have been invested in CVS common stock and preference shares during the Class Period, and instead should have been moved to a more prudent investment. Case law raises serious issue with the burden Plaintiff would face in demonstrating such a lack of prudence on the part of Plan fiduciaries rises to the level of a breach of fiduciary duty. This level could likely be different for investments in the CVS ESOPs as compared to in the 401(k) Plan CVS Stock Fund. Among the issues the parties must consider in determining damages is the question of what a suitable and prudent investment would have returned. Drawing on the

14

Restatement of Trusts, courts have described the goal for measuring losses as "restoring plan participants to the position in which they would have occupied but for the breach of trust." *Eaves v. Penn*, 587 F. 2d 453, 462 (10th Cir.); *see also Donovan v. Bierwirth*, 754 F. 2d 1049, 1056 (2d Cir. 1985)("One appropriate remedy in cases of breach of fiduciary is the restoration of the trust beneficiaries to the position they would have occupied but for the breach of trust")(*citing Restatement (Second) of Trusts* § 205)(1959)).   Here, but for the imprudent investment in CVS common and preference stock, Plaintiff would argue the Plans would have invested other fund(s) whose performance could become relevant to a calculation of damages.   Even this argument, however, faces the added risk in this case that during the Class Period, virtually all of the various funds in which 401(k) Plan participants could invest actually had negative returns.   Because of this and other arguments, Defendants could contend that even should Plaintiff prevail at trial, the damages actually attributable to the alleged misconduct were small.   Plaintiff, on the other hand, believes that a recovery at trial could result in an amount substantially greater than that of the Settlement Fund.

In addition to the cash value of the Settlement Fund and payment of the notice and administration costs, the proposed Settlement also provides for important governance involving the administration of the CVS ERISA Plans, including the adoption of an ERISA Plan Committee Charter.   In summary, the newly adopted ERISA Plan Committee Charter principally provides that the ERISA Plan Committee will: (i) design and implement appropriate risk assessment systems, policies and procedures for the ERISA Plans; (ii) ensure up to two of its members attend Audit Committee meetings of the CVS Board as appropriate to assist it to remain fully informed of financial and operational developments at the Company; (iii) oversee the design and implementation

15

of systems, policies and procedures to review and assess the propriety of plan investment options, including CVS Stock offered by the ERISA Plans; (iv) ensure it receives, reviews and assesses reports, information and data necessary to allow it to adequately and effectively monitor the operations of the ERISA Plans; and (v) ensure it retains, at the Company's expense, all expert legal, financial, regulatory or fiduciary experts necessary to assist it to fully comply with its fiduciary obligations.

The new ERISA Plan Committee Charter in its entirety, is provided as Exhibit 1 of the Settlement Agreement. In addition, the Audit Committee of the Board of CVS will receive periodic reports from the ERISA Plan Committee with respect to the fulfillment of the Plan Committee's Charter obligations.

In short, the proposed settlement amount is a reasonable compromise for both sides, is sufficient and is well within the range that courts traditionally have found to be fair and adequate under the law. *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F. 3d 454, 459 (9th Cir. 2000)(approving settlement with all defendants that comprised one sixth of the plaintiff's potential recovery); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993)(settlement with all but one of the defendants of between 6-10% of damages; *cf. Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F. 2d 615, 628 (9th Cir. 1982)(recognizing that complete settlement for a fraction of total potential damages is acceptable, particularly where other relief is obtained by the class). As the court explained in *Officers for Justice*, the "very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Id.* at 624 (citations omitted). Similar to the agreement in *Rolland*, 191 F.R.D. at 11, the Settlement Agreement herein, "is comprehensive and secures significant relief for class members."

16

### 4.    Recommendation and Experience of Counsel

When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable, and adequate should be given significant weight. *Id.* at 10. A settlement enjoys a presumption of regularity if it is the product of fully informed, adequately prepared and arms-length negotiations by competent counsel with experience in class action litigation. *Newberg on Class Actions* § 11:41.

Plaintiff's Counsel here have long and extensive experience in handling class action ERISA cases and other complex class action litigation. They have successfully prosecuted, and defended, dozens of class actions in state and federal courts throughout the nation. *See* the Resumes of Morris and Morris LLC Counselors At Law, attached hereto as Exhibit 2, of Law Offices Bernard M. Gross P.C., attached hereto as Exhibit 3, and of Law Offices of Bruce G. Murphy, attached hereto as Exhibit 4.

Plaintiff's Counsel were in a strong position to evaluate the strengths and weaknesses of their case. Based upon their experience and knowledge, Plaintiff's Counsel believe that the proposed Settlement achieved here is fair, reasonable, adequate, and in the best interests of the Class. Case law recognizes that Plaintiff's Counsel's opinion that the proposed Settlement is fair should weigh in favor of preliminary approval.

### 5.    Future Expense and Likely Duration of Litigation

"When comparing 'the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation,' there are clearly strong arguments for approving a settlement." *Rolland*, 191 F.R.D. at 10. The claims advanced by the Plaintiff on behalf of the Class are not only hotly contested, they also involve numerous complex

17

legal and financial issues, requiring extensive expert testimony, which would have added considerably to the expense and duration of the litigation. This fact is more evident in this case than in others in light of the substantial benefits resulting in the combination of the discovery and settlement processes here at a relatively early stage of the litigation.

Moreover, even if the Class could recover a larger judgment after trial, the additional delay through trial, post-trial motions and the appellate process could deny the Class access to any recovery for years. *See In re Ikon*, 191 F.R.D. at 179 ("[T]he extremely large sums of money at issue almost guarantee that any outcome, whether by summary judgment or trial, would be appealed. This factor thus weighs in favor of the proposed settlement."). Avoiding this unnecessary expenditure of time and resources clearly benefits all parties and the Court.

The Court is well-aware of the fact that ERISA litigation of the type presented here is a rapidly evolving and demanding area of the law. New precedents are continuous issues, and the demands on counsel and the Court to litigate such claims are complex and require the devotion of significant resources. As described above, while this case settled after extensive investigation and discovery, if this settlement is not approved, a substantial amount of work will clearly be required to proceed to trail, including, *inter alia*, the completion of fact discovery, expert discovery, briefing motions for class certification and summary judgment, designation of witnesses and exhibits, preparation of pre-trial memoranda and proposed findings of fact and conclusions of law, presentation of witnesses and evidence at trial, and, depending on the trial court's ruling on the merits, briefing of the losing party's almost certain appeal. It is not unreasonable to assume that the Defendants would continue their vigorous defense of the claims raised in this case up through trial and a probable appeal, regardless of the trial's outcome.

18

Thus, Plaintiff's Counsel believe that continued litigation would have been complex, time consuming and expensive.  The proposed Settlement secures for the Class an immediate benefit, undiminished by further litigation expenses, without the delay, risk and uncertainty of continued litigation.[4]  The Settlement obviates that delay and will, if approved, advance the recovery to the CVS ERISA Plans, possibly by as much as several years.  This factor thus also argues strongly in favor of preliminary approval of the proposed Settlement.

### 6.    Recommendation of Neutral Parties, if Any

As this litigation has not been subject to mediation, there has been no recommendation by any neutral party.  Therefore, this factor is inapplicable in the instant case.

### 7.    Number and Nature of Objections

As Notice has yet to be issued to the class members, this factor is not applicable to the instant analysis.

### 8.    Presence of Good Faith and Absence of Collusion

In examining the fairness of a proposed settlement, the Court may scrutinize the negotiations leading to the settlement.  *See, e.g., Armstrong v Board of School Directors*, 616 F. 2d 305, 325 (7th Cir. 1980).  In the absence of evidence to the contrary, however, the Court should presume that settlement negotiations were conducted in good faith and that the resulting agreement was reached without collusion.  *Newberg on Class Actions* §11.41 (4th ed. 2002).

---

[4]    Even a jury verdict "is not a guarantee of ultimate success."  *In re Michael Milken Assocs. Sec. Litig.*, 150 F.R.D.46, 54 (S.D.N.Y. 1993) (noting the reversal of a multimillion dollar judgment in *Berkey Photo, Inc. v. Eastman Kodak Co.*, 457 F. Supp. 404 (S.D.N.Y. 1978), *aff'd in part, rev'd in part*, 603 F.2d 263 (2d Cir. 1979)) (reversing $87 million judgment after trial)).

Even without that presumption, however, it is clear that the negotiations leading to this Settlement withstand close examination. As noted, Plaintiff's Counsel engaged in significant investigation and discovery before negotiations began. Coupled with their substantial experience in class action litigation, Plaintiff's Counsel had an excellent grasp of the range of possible outcomes in this case during the in-person and telephonic negotiations. They brought this knowledge to bear in the negotiations with Defendants' Counsel, and the proposed Settlement reflects an informed consideration of a complex array of factual and legal issues.

## III.    PRELIMINARY CERTIFICATION OF THE SETTLEMENT CLASS IS ALSO APPROPRIATE

Class certification is governed by Fed. R. Civ. P. 23, whether certification is sought pursuant to a contested motion, or, as here, pursuant to a proposed settlement. *See, e.g., Anchem Prods. V. Windsor*, 521 U.S. 591, 619-29 (1997). Thus, the Court may preliminarily certify the proposed class now upon finding that the action satisfies the four prerequisites of Rule 23(a) and one or more of the subdivisions of Rule 23(b). *Id. See also In re Prudential Ins. Co. of Amer. Sales Practice Litig.*, 148 F. 3d 283, 308 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114.

In conducting this analysis, this Court has the benefit of numerous reported decisions, which represent a clear consensus since virtually every reported decision considering alleged violations of fiduciary duties under ERISA has concluded that class certification is appropriate under Rule 23. *See, e.g., Rankin v. Rots*, 220 F.R.D. 511 (E.D. Mich. 2004)(certifying for class treatment ERISA claims); *Koch v. Dwyer*, 2001 WL 289972 at *5 (S.D.N.Y. 2001); *Whelman v. IKON Office Solutions, Inc.*, 191 F.R.D. 457, 466 (E.D.Pa. 2000); *Atwood v. Burlington Indus. Equity, Inc.*, 164 F.R.D. 177, 179 (M.D.N.C. 1995); *Gruby v. Brady*, 838 F. Supp. 820, 827 (S.D.N.Y. 1993).

20

As these authorities teach, plan-wide claims against ERISA fiduciaries are particularly suitable and appropriate for class certification. As such, the proposed Class satisfies each requirement of Rule 23(a), (b)(1) and (b)(2).

### A.    The Proposed Class Satisfies the Requirements of Rule 23(a)

### 1.    The Settlement Class Meets the Numerosity Requirement

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Here, Plaintiff believes and alleges that the Class is comprised of thousands of people. While there is no *per se* rule for establishing numerosity, *Watson v. Shell Oil Co.*, 979 F. 2d 1014, 1022 (5th Cir. 1992), where a class is plainly numerous with hundreds or thousands of members, joinder is impracticable and Rule 23(a)(1) is satisfied. *See, e.g., In re Carbon Black Antitrust Litig.*, 2005 WL 102966 at *10 (D. Mass. Jan. 18, 2005, slip op.)(numerosity is not a difficult standard to satisfy, and allegations of hundreds of purchasers throughout the country satisfies the numerosity requirement); *see also Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981). There can be no dispute that the Class is so numerous that joinder of all parties is impractical under Rule 23(a)(1).

### 2.    There are Common Questions of Law or Fact

As many courts have recognized, "commonality, or shared issues of law and fact" under Rule 23(a)(2) "is not a high burden." *See, e.g., Mullen v. Treasure Chest Casino LLC*, 186 F. 3d 620, 625 (5th Cir. 1999). Commonality does not require a showing that the interests and claims of the class members are identical; "the commonality test is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative Class members." *In re Carbon Black*,

2005 WL 102966 at *10;  *see also Forbush v. J.C. Penny Co., Inc.*, 994 F. 2d 1101, 1106 (5th Cir. 1993).

Common questions abound in ERISA cases involving alleged breaches of fiduciary duties. Plaintiff and all class members are similarly situated in their need to establish answers to these questions.  "In general, the question of defendant's liability for ERISA violations is common to all class members because a breach of fiduciary duty affects all participants and beneficiaries." *Banyal v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002).   Consequently, in the ERISA context, courts repeatedly have held that such questions satisfy Rule 23(a)'s commonality requirement.  *See, e.g., Rankin*, 220 F.R.D. at 518 (common questions include, among others, whether Defendants were fiduciaries of the plan and whether defendants breached their fiduciary duties.").

Commonality is easily met here. Defendants' violations of ERISA arise from a common nucleus of operative facts --  Defendants' actions and inaction with respect to the Plan -- and class members have been similarly victimized by the same breaches of fiduciary duty.  Common issues of fact and law concerning the proposed Class include the following:

    (a)    whether Defendants each owed a fiduciary duty to Plaintiff and members of the Class;

    (b)    whether Defendants breached their fiduciary duties to Plaintiff and members of the Class by failing to act prudently and solely in the interests of the Plans' participants and beneficiaries;

    (c)    whether Defendants violated ERISA; and

    (d)    whether the members of the Class have sustained damages, and, if so, what is the proper measure of damages.

Each of these issues apply equally to all class members.  Where, as here, there are many common issues of fact and law, the commonality requirement of Rule 23(a)(2) is plainly satisfied.

### 3.    The Plaintiff's Claims and Defenses are Typical of Those of the Class

The typicality requirement examines whether the proposed class representative has the same interests and seeks a remedy for the same injuries as other class members. *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977).  However, there is no requirement that the circumstances of the named plaintiffs and the potential class be entirely identical.  As long as the class representative's claims are "reasonably coextensive with those of absent class members, typicality if established." *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1020 (9th Cir. 1988); *see also Becher v. Long Island Lighting Co.*, 164 F.R.D. 144, 151 (E.D.N.Y. 1996).  The critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class.  If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not even defeat typicality.  5 James Wm. Moore, et al., *Moore's Federal Practice* § 23.24[4](3d ed. 2000).

Likewise, difference in damages among class members will not defeat typicality.  As the court in *IKON* explained:

> Even if there are significant differences in the damages that may be claimed by those who acquired stock based on misrepresentations and those who held stock based on misrepresentations, both groups must prove the same core issues: whether there were misrepresentations and whether the defendants even acted as fiduciaries.

191 F.R.D. at 465; *see also Walsh v. Northop Grumman Corp.*, 162 F.R.D. 440, 445 (E.D.N.Y. 1995)(finding that issue of damages is not germane to Rule 23 inquiry).

Here, the named Plaintiff was a Plan participant in both the 401(k) Plan and the ESOPs, and held CVS common and preference stock in his Plan accounts.  Plaintiff seeks recovery for the Plans

as a whole, based on Defendants' conduct. Thus, Plaintiff's claims are completely in line with the claims of other class members, and so meet the typicality requirement. *IKON*, 191 F.R.D. at 465 (finding typicality of claims where "the named plaintiffs and the putative class would necessarily allege a similar course of conduct: that Ikon and the individual defendants failed to provide accurate information in violation of ERISA obligations").

Further, because of ERISA's unique standing and remedial provisions, each class member seeks and is entitled to plan-wide relief. ERISA §409(a), 29 U.S.C. §1109(a) (liability for breach of fiduciary duty is to the plan): ERISA §502(a)(2), 29 U.S.C. §1132(a)(2) (authorizing plan participant to sue for breach of fiduciary duty under §409(a)); *Kayes v. Pac. Lumber Co.*, 51 F. 3d 1449, 1463 (9th Cir. 1995), *cert. denied*, 516 U.S. 914 (1995). With each class member stating the same claim, concerning the same conduct, and seeking the same relief, there can be no real doubt that the claims asserted are sufficiently typical for purposes of Rule 23 (a)(3).

### 4. The Plaintiff Will Fairly and Adequately Protect the Interests of All Class Members

Rule 23(a)(4) requires that the class representatives fairly and adequately protect the interests of the class they seek to represent. There are two prongs to this requirement. The representatives must: (i) have interests that are not antagonistic to the interest of other members of the class; and (ii) have retained attorneys who are qualified, experienced and able to conduct the litigation. *Sosna v. Iowa*, 419 U.S. 393, 403 (1975). These requirements are easily met here, where Plaintiff "seek[s] to have the fiduciaries 'personally restore to the Fund any losses incurred'... [and] the named Plaintiff['s [] interests are the same as those of the absentee class members: all seek to increase the value of the Fund." *Kane v. United Independent Union Welfare Fund*, 1998 WL 78985 at *8 (E.D.

Pa. 1998).  Clearly, the named Plaintiff's interests are aligned with those of the Class, and he has retained qualified counsel with extensive experience in representing plaintiffs in class action litigation, including ERISA cases.  The requirements of Rule 23(a)(4) are satisfied here.

### B.    The Proposed Class Satisfies the Requirements of Rule 23(b)(1) and (b)(2)

#### 1.    Individual Actions Would Establish Incompatible Standards of Conduct or Would be Dispositive of the Interests of Absent Class Members

A class may be certified under Rule 23(b)(1) if, in addition to meeting the requirements of Rule 23(a), the prosecution of separate actions by individual class members would create the risk of inconsistent adjudications, which would create incompatible standards of conduct for the defendants, or would as a practical matter be dispositive of the interests of absent class members. Fed. R. Civ. P. 23(b)(1)(A), (B).  Other courts have certified classes under Rule 23(b)(1) in ERISA cases for those very reasons.  *See, e.g., IKON*, 191 F.R.D. at 466.

Moreover, the Advisory Committee on Rule 23 specifically noted that actions that "charge a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of ... beneficiaries" -- i.e. an action such as this one -- "should ordinarily be conducted as class actions" under Rule 23(b)(1)(B).  Advisory Committee on 1996 Amendment to Rule 23.  As a result, certification of the proposed class herein under Rule 23(b)(1) is appropriate.

#### 2.    The Defendants Have Acted or Refused to Act on Grounds Generally Applicable to the Class and Injunctive Relief for the Class as a Whole is Appropriate

A class may be certified under Rule 23(b)(2) if, in addition to meeting the requirements of Rule 23(a), "the party opposing the class has acted or refused to act on grounds generally applicable

to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).

Plaintiff's claims are based on conduct by Defendants that is generally applicable to the Class as a whole. Plaintiff alleges that Defendants breached their fiduciary duties to Plans by, *inter alia*: (i) failing to ensure that Company common and preference stock were prudent investments for the Plans; (ii) misrepresenting material information concerning the value of Company stock and the prudence of investing Plan assets in the such stock; and (iii) failing to disclose material information regarding the value of Company stock, and the prudence of investing Plan assets in the such stock. These fiduciary breaches were directed to the Plans as a whole, not specific class members or even a subset of class members. Indeed, ERISA's remedial provisions, including restoration of the Plans' losses, are, by definition, plan-wide remedies. *See, e.g., Bublitz v. E.I. du Pont de Nemours & Co.*, 202 F.R.D. 251, 259 (S.D. Iowa 2001)(granting certification of Rule 23(b)(2) class in ERISA breach of fiduciary duty case); *Berger v. Xerox Corp.*, 338 F. 3d 755, 764 (7th Cir. 2003)(approving class certification under Rule 23(b)(2) in ERISA breach of fiduciary duty case).

Thus, it cannot be disputed that this conduct was "generally applicable to the class." *See Amara v. CIGNA Corp.*, 2002 WL 31993224 at *4 (D. Conn. 2002)(claim for plan-wide relief under ERISA falls squarely within the purview of subsection (b)(2); *see also LaFlamme v. Carpenters Local #370 Pension Plan*, 212 F.R.D. 448, 456-57 (N.D.N.Y. 2003)(certifying ERISA class under (b)(2) where plaintiffs challenged defendants' conduct generally applicable to the class and sought declaratory relief that defendants has violated ERISA). Accordingly, Plaintiff's claims are properly certified under Rule 23(b)(2).

**C.    The Proposed Settlement Satisfies the Requirements of Rule 23(g)**

Rule 23(g) requires the Court to examine the capabilities and resources of Plaintiff's Counsel to determine whether they will provide adequate representation to the class. Here, Plaintiff's Counsel have done substantial work to identify and investigate potential claims in the Action, and have refined those allegations in the Amended Complaint. Plaintiff's Counsel have investigated allegations made in the Amended Complaint by, *inter alia*, examining publicly available information, reviewing thousands of pages of documents obtained in the course of discovery in connection with the summary judgment motion in the securities action; and consulting with experts. As noted above, Plaintiff's Counsel have experience in handling class actions, other complex litigation, and other claims of the type asserted in this action. Plaintiff's Counsel also have demonstrated knowledge of the specific legal principles presented in this case. Finally, Plaintiff's Counsel have devoted appropriate resources to this litigation, including the efficient delegation of work and responsibility among firms and attorneys. Thus, there can be no doubt that the requirements of Rule 23(g) are satisfied by Plaintiff's Counsel here.

**D.    The Proposed Notice to the Class Satisfies
        Rule 23 and Due Process Requirements**

Although notice is not always required when a court certifies a class under Rules 23(b)(1) or 23(b)(2), Plaintiff proposes that notice be given as detailed above and at Exhibit C to the proposed Preliminary Approval Order attached to the Settlement Agreement. The purpose of the class notice is to fulfill the requirements of due process, alerting and informing potential class members of the terms of the proposed Settlement, and of their opportunity to appear and be heard at the fairness hearing. In order to satisfy due process, notice to class members must be "reasonably calculated,

under all the circumstances, to apprise interested parties of the pendency of the action and afford

them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*,

339 U.S. 306, 314 (1950). Notice should also provide a "very general description [] of the proposed

settlement." *Weinberger v Kendrick*, 698 F. 2d 61, 70 (2d Cir. 1982).

As set forth at Exhibit A to the Agreement, the proposed form of individual notice describes

in plain English the terms and operation of the proposed Settlement; the facts and considerations that

caused Plaintiff's Counsel to conclude that the proposed Settlement is fair and adequate; the

maximum amount of counsel fees and class representative compensation that may be sought by

Plaintiff's Counsel, the procedure for objecting to the proposed Settlement, and the date, place, and

time of the fairness hearing. With the Court's approval, the individual notice will be sent by first

class mail to each class member at the last known addresses provided by the Company, no later than

two weeks after the entry of the Preliminary Approval Order. In addition, a Publication Notice will

be published in *The Wall Street Journal* no later than three weeks after entry of the Preliminary

Approval Order. These proposed forms of notice will fairly apprise class members of the proposed

Settlement, and of their options with respect thereto, and thus, fully satisfy due process requirements.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his Motion and issue an order: (i) preliminarily approving the proposed Settlement; (ii) preliminarily certifying the proposed class; (iii) approving the forms of the proposed notice; (iv) authorizing the mailing and publication of these notices; and (v) setting a date and time for the fairness hearing.

For the Court's convenience, a proposed form of Order is here provided as Exhibit 1.

Dated: July 1, 2005

Respectfully submitted,

**LAW OFFICES
BERNARD M. GROSS,  P.C**

By:  _____/s_____
        Deborah R. Gross (Bar # 546151)
Suite 450- John Wanamaker Bldg.
100 Penn Square East
Philadelphia, PA 19107
Telephone: 215-561-3600
Facsimile: 215-561-3000

**Plaintiff's Counsel**

**Of Counsel:**

Karen L. Morris
Patrick F. Morris
**MORRIS AND MORRIS, LLC
   COUNSELORS AT LAW**
4001 Kennett Pike
Suite 300
Greenville, DE   19807
Telephone: 302-426-0400
Facsimile: 302-426-0406

Bruce G. Murphy
**LAW OFFICES OF BRUCE G.
    MURPHY**
265 Lywyds Lane
Vero Beach, FL 32963
Telephone: 828-737-0500

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 1, 2005, I caused a true and correct copy of the following documents:

a.    Plaintiff's Motion and Memorandum in Support of Plaintiff's Motion for an Order Preliminarily Approving Settlement, Certifying the Class and Setting a Date and Time for the Fairness Hearing, with exhibits,

b.    Stipulation and Agreement of Settlement of ERISA Action, with exhibits, and

c.    a clean and redline/blackline version of the amended complaint

to be served via U.S. Mail to:

Dennis E. Glazer
Davis, Polk and Wardwell
450 Lexington Avenue
New York, New York 10017

_____/s_____
Susan R. Gross