## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

---

|  |  |  |
|---|---|---|
| JAMES FESCINA, Individually and On Behalf of All Others Similarly Situated | : | |
| | : | |
| | : | Civil Action No. 04-12309-JLT |
| Plaintiff | : | |
| | : | |
| vs. | : | |
| | : | |
| CVS CORPORATION, THOMAS M. RYAN, STANLEY P. GOLDSTEIN, EUGENE APPLEBAUM, W. DON CORNWELL, THOMAS P. GERRITY, MARIAN L. HEARD, WILLIAM H. JOYCE, TERRENCE MURRAY, SHELI Z. ROSENBERG, IVAN G. SEIDENBERG, DAVID RICKARD, ZENON P. LANKOWSKY, ROSEMARY MEDE, and UNKNOWN FIDUCIARY DEFENDANTS 1-100 | : | |
| | : | |
| Defendants | : | |

---

### STIPULATION AND AGREEMENT OF SETTLEMENT OF ERISA ACTION

This Stipulation and Settlement Agreement of ERISA Action ("Agreement") is entered into as of July 1, 2005, by and among the following parties (as defined in this Agreement): (i) the Class Representative, individually and on behalf of the ERISA Plans, by and through Class Counsel; and (ii) CVS Corporation and the Individual Defendants, by and through their attorneys, pursuant to Rule 23 of the Federal Rules of Civil Procedure and subject to the Court's approval.

**1.    RECITALS**

1.1    This Agreement resolves, subject to the approval of the Court, the above-captioned

action filed on October 29, 2004 in the United States District Court for the District of Massachusetts

against the Defendants, asserting claims arising under the Employee Retirement Income Security Act

of 1974, as amended ("ERISA").  The Amended Complaint in this action is filed simultaneously

with this Stipulation.  The Amended Complaint alleges that the Defendants breached their fiduciary

duties and otherwise violated ERISA by continuing to hold and/or using employee and employer

contributions to the CVS 401(k) Profit Sharing Plan (the "401(k) Plan"), the CVS Corporation and

Subsidiaries Employee Stock Ownership Plan (the "CVS ESOP") and the ESOP Diversified

Account, (collectively "the ERISA Plans") to purchase or acquire common stock of CVS and/or

CVS preference stock (collectively "CVS Stock"), at a time when it was an unsuitable and imprudent

investment for the ERISA Plans.  Plaintiff also alleges that Defendants violated ERISA by failing

to take appropriate actions to protect participants and beneficiaries from losses that resulted from the

imprudent acquisition and retention of CVS Stock by the ERISA Plans during the same period.

1.2    Plaintiff further alleges that Defendants violated ERISA by misrepresenting to

Plaintiff and participants in the ERISA Plans the true operational and financial status of CVS and,

consequently, the true value of CVS Stock.  The Amended Complaint seeks equitable and

compensatory relief on behalf of the Plaintiff, Class Members and the ERISA Plans, pursuant to

ERISA §§409, 502(a)(2), and 502(a)(3), plus attorneys' fees, expenses, and costs pursuant to the

common fund doctrine, ERISA §502(g)(1), and other law.

1.3    Plaintiff seeks certification pursuant to Fed. R. Civ. P. 23 of a class consisting of all

persons who were participants or beneficiaries of the ERISA Plans between December 1, 2000 and

October 30, 2001 (the "Class Period"), and who held, purchased, acquired or had contributed CVS Stock to their accounts in the ERISA Plans at any time during such period, other than Defendants individually named in the Amended Complaint and their immediate family members.

1.4    Defendants have denied and continue to deny each of the claims and allegations of wrongdoing in the Amended Complaint. Defendants have specifically denied and continue to deny, *inter alia*, the allegations that they breached any fiduciary duties or any other provisions of ERISA in connection with the acquisition or retention of CVS Stock by the ERISA Plans during the Class Period or at any time, and deny that they in any way misrepresented the operational or financial performance of CVS or the value of CVS Stock either directly or indirectly to participants in the ERISA Plans. Defendants further deny that Plaintiff, the proposed Class, or the ERISA Plans are entitled to any relief of any kind.

2.    **BASIS FOR SETTLEMENT**

2.1    Plaintiff's Counsel, as defined below, have conducted a thorough investigation into Plaintiff's claims, the underlying events and transactions alleged in the Amended Complaint, and the operation and administration of the ERISA Plans. Plaintiff's Counsel have also reviewed thousands of pages of documents produced by CVS, as well as documents obtained from public sources and the files of Plaintiff. Additionally, Plaintiff's Counsel have consulted with experts and made a thorough study of the legal principles applicable to the actual and potential claims of the Plaintiff, the ERISA Plans, and the Settlement Class.

2.2    The parties have engaged in good faith, arms-length negotiations. Following in person and telephonic communications between Plaintiff's Counsel and Defendants' Counsel, the

parties to the Action agreed to a settlement, the terms of which are embodied in this Settlement Agreement.

2.3    Although the Defendants continue to deny all liability with respect to any and all of the claims alleged in the Amended Complaint, the Defendants nevertheless consider it desirable that any and all possible controversies and disputes that arise out of or relate to the matters, transactions, and occurrences referenced in the Amended Complaint and/or related to the ERISA Plans and the investment options in the ERISA Plans, be conclusively settled and terminated on the terms and conditions set forth below.  The Settlement of the Action and the attendant final dismissal of the Amended Complaint will avoid the substantial expense, inconvenience, and risk of continued litigation and will bring the claims and potential claims of Plaintiff, the ERISA Plans, the ERISA Plans' fiduciaries and the Settlement Class to an end.

2.4    Based on Plaintiff's investigation, and after considering: (a) the substantial benefits that Plaintiff, the ERISA Plans and the members of the Settlement Class will receive from the Settlement; (b) the risk of continued litigation; (c) the likely length of time before final resolution of the claims, including time spent in possible appeals if the Action were not settled; and (d) the desirability of permitting the Settlement to be consummated as provided by the terms of this Agreement, Plaintiff's Counsel have concluded that the terms and conditions of the proposed Settlement as set forth in this Agreement are fair, reasonable, and adequate to Plaintiff, the ERISA Plans and the members of the Settlement Class, and Plaintiff and Plaintiff's Counsel have agreed to settle and compromise the Action pursuant to the terms and provisions of this Agreement, subject to the approval of the Court.

ACCORDINGLY, THE UNDERSIGNED ATTORNEYS FOR THE PARTIES HEREBY STIPULATE AND AGREE on behalf of their respective clients and the ERISA Plans and the Settlement Class to settle, to compromise, and to dismiss this Action with prejudice, subject to the approval of the Court, in the manner and on the terms and conditions set forth below.

**3.      SETTLEMENT TERMS**

In addition to the terms heretofore defined, as used in this Agreement:

3.1      "Action" means the lawsuit captioned *Fescina v. CVS Corporation, et al.*, Civil Action No. 04-12309-JLT.

3.2      "Administrative Expenses" means the expenses incurred in the administration of this Agreement, including, without limitation, all expenses or costs associated with providing the Notices described in Section 10, and all expenses or costs associated with distribution of the Net Settlement Fund as described in Section 6, below.

3.3      "Agreement" means the Stipulation and Agreement of Settlement entered herein by the parties.

3.4      "Amended Complaint" means the Amended Complaint filed in the lawsuit captioned *Fescina v. CVS Corporation, et al.*, Civil Action No. 04-12309-JLT.

3.5      "Attorneys' Expenses" means the amount awarded by the Court as reimbursement for Plaintiff's Counsel's costs and expenses of litigation.

3.6      "Attorneys' Fees" means the amount awarded by the Court as compensation for the services provided by Plaintiff's Counsel.

3.7    "Authorized Claimant" means a member of the Class whose aggregate Settlement Claims the Claims Administrator determines to be worth at least $10.00 pursuant to the process set forth in Section 6 below.

3.8    "Authorized Former Claimant" means an Authorized Claimant who was a former participant in any of the ERISA Plans as of March 23, 2005.  For the purposes of the CVS ESOP, ESOP Diversified Account and/or CVS employer matching contributions, the Class member must have been vested in his or her account(s) as of the date of termination to be deemed an Authorized Former Claimant.

3.9    "Claims Administrator" means The Garden City Group, Inc., who, in coordination with CVS and/or the ERISA Plans, will be responsible for notice and administration of the Settlement, including: (i) printing and dissemination of Notice in accordance with Section 10 below; and (ii) calculating Settlement Claims and effectuating distributions to Authorized Claimants and Authorized Former Claimants in accordance with the provisions of this Agreement.  CVS is solely responsible for payment of all Administrative Expenses incurred pursuant to the Settlement separate from the establishment of the Settlement Fund.

3.10    "Class" or "Settlement Class" means the class to be conditionally certified by the Court pursuant to the Preliminary Approval Order, consisting of all Persons (other than persons who are named as Defendants in the Amended Complaint and their immediate family members) who were participants or beneficiaries under the ERISA Plans during any portion of the Class Period and who held, purchased, acquired or had contributed CVS Stock in their plan account(s) at any time during the Class Period.

6

3.11    "Class Counsel" or "Plaintiff's Counsel" means the firms of Morris and Morris LLC Counselors at Law, Law Offices Bernard M. Gross, P.C., and Law Offices of Bruce J. Murphy.

3.12    "Class Period" means the period between December 1, 2000 and October 30, 2001, inclusive.

3.13    "Class Representative" and "Plaintiff" means James Fescina.

3.14    "Code" means the Internal Revenue Code of 1986.

3.15    "CVS" means CVS Corporation.

3.16    "CVS Stock" means collectively: (i) the common stock issued by CVS and traded on the New York Stock Exchange, and (ii) the preference shares issued or contributed by CVS into the CVS ESOP and/or into the ESOP Diversified Account and as part of CVS' matching contribution into the 401(k) Plan.

3.17    "Defendants" means CVS Corporation, Thomas M. Ryan, Stanley P. Goldstein, Eugene Applebaum, W. Don Cornwell, Thomas P. Gerrity, Marian L. Heard, William H. Joyce, Terrence Murray, Sheli Z. Rosenberg, Ivan G. Seidenberg, David Rickard, Zenon P. Lankowsky, and Rosemary Mede.  "Individual Defendants" means the Defendants, except CVS.

3.18    "Defendants' Counsel" means the firm of Davis Polk & Wardwell for CVS and each of the Individual Defendants.

3.19    "Derivative Action" means the action captioned *Krantz v. Ryan et al.*, Civil Action No. 04-12650-REK, pending in the United States District Court for the District of Massachusetts.

3.20    "Final Approval" or "Final Approval of the Settlement" means the entry of an Order and Final Judgment, substantially in the form of Exhibit D hereto, approving this Agreement and the Settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the full, final, and

favorable determination of any appeals, petitions, motions for reconsideration, or any other proceedings for review or, if no such review proceedings are taken, the expiration of the applicable time to appeal or seek review from such order.

3.21    "Net Settlement Fund" means the Settlement Fund, plus interest that has accrued thereon, less the Attorneys' Fees, Attorneys' Expenses, and the Plaintiff's Incentive Award as defined herein.

3.22    "Notice" and "Individual Notice" means the Notice of Pendency of Class Action, Proposed Settlement, and Hearing attached to this Agreement as Exhibit A.

3.23    "Order and Final Judgment" means an order and judgment of the Court approving the Settlement and entry of a final judgment in the form annexed hereto as Exhibit D, or upon terms not materially different from those set forth in Exhibit D.

3.24    "Person(s)" means a natural person, a corporation, partnership, association, or any other entity.

3.25    "Plaintiff's Incentive Award" means an amount not to exceed $10,000.00, which, subject to approval of the Court, will be paid out of the Settlement Fund to the Class Representative in recognition of his contributions to the Action.

3.26    Preliminary Approval Order" means an order, substantially in the form annexed hereto as Exhibit C, approving the forms and procedure for providing notice to the Settlement Class, conditionally certifying the Settlement Class, appointing the named Plaintiff as the representative of the Settlement Class and Plaintiff's Counsel as counsel to the Class, establishing a procedure for members of the Settlement Class to follow in order to object to the Settlement, and setting a date for a hearing on the approval of the Settlement.

3.27    "Publication Notice" means the summary form of Notice, attached to this Agreement as Exhibit B, to be published in *The Wall Street Journal* or other national publications mutually agreed upon by Class Counsel and Defendants' Counsel.

3.28    "Related Parties" means each of a Defendant's past, present, and future directors, officers, fiduciaries, employees, partners, principals, agents, members, independent contractors, registered representatives, underwriters, issuers, insurers, coinsurers, reinsurers, controlling shareholders, attorneys, accountants, auditors, investment bankers, advisors, consultants, trustees, fiduciaries, personal representatives, predecessors, successors, successors-in-interest, parents, subsidiaries, divisions, assigns, spouses, heirs, executors, administrators, associates, related or affiliated entities, and members of their families.

3.29    "Released Claims" means any and all claims, demands, damages, defenses, rights, liabilities, and causes of action in law or equity whatsoever, known or unknown, matured or unmatured, accrued or unaccrued, fixed or contingent, liquidated or unliquidated, arising under state or federal law or any other source of law, by or on behalf of the Plaintiff, the ERISA Plans, the ERISA Plans' fiduciaries, or any member of the Settlement Class on their own behalf and on behalf of any Persons they represent (including the ERISA Plans and their respective spouses, heirs, executors, administrators, past and present partners, officers, directors, agents, attorneys, predecessors, successors and assigns), against any of the Released Persons based upon or arising out of or relating in any way (in whole or in part) to the acquisition, disposition or retention by the Plaintiff, the ERISA Plans or any members of the Settlement Class of CVS Stock during the Class Period which relate directly or indirectly to the facts, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act which were alleged or could have been alleged

in the Amended Complaint filed in the Action. The "Released Claims" also shall include any and all claims by or on behalf of each and every Defendant against Plaintiff, the Settlement Class and Class Counsel relating to the institution, prosecution or Settlement of any or all claims asserted in this Action, including, but not limited to, any action for costs or attorney's fees as well as for contribution, indemnification or any other claims relating to payment of the Settlement Fund or any Settlement claims by the Defendants. Notwithstanding any provision in this Settlement Agreement, excluded from the Released Claims are any claims brought in the Securities Action or Derivative action.

3.30    "Released Persons" means each of the Defendants and all their Related Parties.

3.31    "Settlement Account" means the interest bearing account set up or established by the Claims Administrator into which the Settlement Fund will be transferred or deposited pursuant to paragraph 5.1 below. No monies may be transferred out of the Settlement Account except as provided for in this Agreement or directed by the Court.

3.32    "Securities Action" means the securities action pending in the United States District Court for the District of Massachusetts under the caption *In re: CVS Corporation Securities Litigation*, Civil Action No. 01-11464-JLT.

3.33    "Settlement" means the resolution of the Action in the manner and on the terms set forth herein.

3.34    "Settlement Claim" means the total dollar amount of each Authorized Claimant's and Authorized Former Claimant's Settlement Claims, as determined in Section 6 below and each.

3.35    "Settlement Fund" means the sum of $3,000,000, to be paid by CVS pursuant to Section 5.1 below.

4.    **STIPULATION TO CLASS CERTIFICATION OF THE SETTLEMENT CLASS**

4.1     The parties to this Agreement stipulate and agree that for settlement purposes only this Action shall proceed as a non-opt out class action pursuant to Fed. R. Civ. P. Rules 23(a)(1)-(4), 23(b)(1), and (b)(2) with Karen L. Morris, Esq., and Patrick F. Morris, Esq. of Morris and Morris LLC Counselors at Law, Deborah R. Gross, Esq. of the Law Offices Bernard M. Gross, P.C., and Bruce G. Murphy of the Law Offices of Bruce G. Murphy as Class Counsel, and with a Settlement Class and Class Period as defined above as follows:

> all Persons, other than persons who are named as Defendants in the Amended Complaint and their immediate family members, who were participants or beneficiaries under the ERISA Plans during any portion of the Class Period and who held, purchased, acquired or had contributed CVS Stock in their plan account(s) at any time during the Class Period.

5.    **THE SETTLEMENT FUND**

5.1     Within five (5) business days after the execution of this Agreement, CVS shall deposit in the Settlement Account the sum of $3,000,000, which amount will be used to fund the Settlement Fund.  Interest earned on the Settlement Fund will accrue to the benefit of, and be added to, the Settlement Fund.

5.2     Within five (5) days of the Final Approval of the Settlement, the Plaintiff's Incentive Award, if approved by the Court, will be paid from the Settlement Fund to Class Counsel for the Class Representative, which Class Counsel will remit to the Plaintiff.

5.3     Subject to the provisions of paragraph 12.1 below, in the absence of any objectors to the Settlement, within five (5) days of the entry by the Court of the Order and Final Judgment, such Attorneys' Fees and Attorneys' Expenses as may be approved by the Court in the Order and Final

Judgment ("Approved Attorneys' Fees") will be paid from the Settlement Fund to Class Counsel. If there are objectors to the proposed Settlement, payment of Approved Attorneys' Fees will be made to Class Counsel within five (5) days of the Final Approval of the Settlement, unless the parties agree otherwise.

5.4    As required, CVS shall assist the Claims Administrator with the calculation of Settlement Claims, the identification of Authorized Claimants, and the payment of Claims. The Claims Administrator, in coordination with CVS and Plaintiff's Counsel, as necessary or required in good faith, will be responsible for all communications with Authorized Claimants regarding their Claims. Class members will be instructed in the Notice and Publication Notice to contact Plaintiff's Counsel, or an agent designated by them, with any questions regarding the Settlement or Settlement Claims. Neither the Defendants nor Defendants' Counsel shall have any responsibility with respect to such questions.

6.    **PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND**

6.1    CVS 401(k) Plan participants will not be eligible to recover under the Settlement for any CVS common stock sales that occurred during the Class Period *prior to* June 15, 2001.

6.2    To be eligible to recover under the Settlement, CVS ESOP and/or CVS Diversified ESOP Account (the "ESOPs") participants must have: (a) terminated their ESOP account(s) between June 15, 2001 and March 23, 2005; and (b) been vested in their ESOP account(s) as of the account termination date. Settlement Class Members who did *not* terminate their ESOPs account(s) before March 23, 2005 will not be eligible to recover under the Settlement.

6.3    The Net Settlement Fund will be allocated 75% for distribution to the 401(k) Plan participants (the "401(k) Allocation Amount") and 25% for distribution to the CVS ESOP and Diversified ESOP Account participants (the "CVS ESOP Allocation Amount").

6.4    These rules and the proposed allocation are intended to reasonably reflect the increased risks as to liability and damages members of the ESOPs face compared to members of the 401(k) Plan, based on both the legally recognized presumption of propriety ESOPs administrators enjoy for investments in company stock, and the fact CVS' stock price, over time, has returned to pre-Class Period values, adversely affecting damage calculations in light of the illiquid and restrictive nature of the CVS ESOPs' preference shares.

6.5    Unless otherwise agreed by the parties, within five business days after filing this Agreement, the Defendants shall provide or make available to the Claims Administrator or its designees the following information pertaining to the account(s) in the Plans of each member of the Settlement Class as identified and maintained in the records of the Plans:

a.    The Claimant's name, last known address, and social security number;

b.    The information necessary to make the calculations in Section 6.6 below.  If precise data is not readily available, the parties will meet and confer regarding the data that will be used.  This information will include for each Claimant: (i) the account balance in U.S. dollars invested in either or both CVS common stock and/or CVS preference stock at the beginning of the Class Period; (ii) the dollar value of purchases of such CVS common stock and/or CVS preference stock during the Class Period; (c) the dollar value of sales of such CVS common stock and/or CVS preference stock during the Class Period; and (d) the account

balance in U.S. dollars invested in such CVS common stock and/or CVS preference stock as of the end of the Class Period.

c.      Whether the Claimant is a current participant in either Plan as of the most recent date for which such information is reasonably available, and if not, the date the Claimant terminated from the Plan(s).

6.6      Within sixty (60) days of Final Approval, the Claims Administrator will calculate the approximate loss ("Loss") for each Settlement Class Member's claims for the 401(k) Plan and the CVS ESOPs, based on the information described in Section 6.5, and according to the following court approved-methodologies:

a.      <u>CVS 401(k) Plan:</u>

$$Loss = (A + B) - C, \text{ where}$$

A = the value of the number of shares of CVS common stock shares held in the 401(k) Plan on December 1, 2000, valued at the December 1, 2000 closing price/share of $53.66, *less* the value of those same shares on the earlier of:

(i)      the October 30, 2001 closing price of $23.79/share; or

(ii)      if the participant terminated from the Fund during the Class Period *on or after* June 15, 2001, the participant's last day of participation in the Company Stock Fund at the closing price/share on that day.

AND

B = the value of all shares of CVS common stock shares acquired (whether through contributions, dividends or otherwise) during the Class Period, based on the closing

14

price of the stock on the date of each such acquisition, *less* the value of these same shares on the earlier of:

      (i)      the October 30, 2001 closing price of $23.79/share; or

      (ii)      if the participant terminated from the Fund during the Class Period *on or after* June 15, 2001, the participant's last day of participation in the Company Stock Fund at the closing price on that day.

AND

C = the value of all shares of CVS common stock shares sold during the Class Period, valued based on the closing price/share of such stock on the date of each such sale.

b.     <u>CVS ESOPs:</u>

$$Loss = (A + B) - C, \text{ where}$$

A = the value of the number of CVS preference shares held in the ESOPs on December 1, 2000, valued at the December 1, 2000 closing price/share of $53.66;

AND

B = the value of all CVS preference shares acquired (through contribution, dividend or otherwise) during the Class Period, valued at the closing price/share for each date on which such acquisition(s) occurred;

AND

C = the value of those same shares upon the termination of the account(s) *on or after* June 15, 2001, valued (on a first in, first out basis) at the closing price/share on the date such accounts were terminated.

15

6.7     The Losses of the Claimants as calculated in paragraph 6.6 above will be totaled to yield the Loss of each Plan as a whole (the "Plan Loss"). The Net Settlement Fund shall be apportioned between the CVS 401(k) Plan and the CVS ESOPs as provided in Section 6.1 above.

6.8     The Claims Administrator will calculate the Settlement Claim amount for the Account of each Authorized Claimant, which is the amount that is the same percent of the amount of the Net Settlement Fund allocated to the Plan in question as the Authorized Claimant's Loss bears to the Plan Loss of the Plan in question.

6.9     The Claims Administrator will identify all Claimants whose Settlement Claim is less than $10.00 ("de minimis amount"). All such Claimants whose Settlement payment is de minimis will not receive an award from the Net Settlement Fund, and their Settlement Claim amounts will not be considered or included in calculating Plan Losses. The remaining Claimants will be deemed Authorized Claimants. The Parties reserve the right to lower the dollar value of the de minimis amount as appropriate, based on the final calculations of Settlement Claim amounts by the Claims Administrator pursuant to the Plan of Allocation.

6.10    In light of the manner in which the data is kept and the ease with which it can be manipulated, it may be appropriate to simplify some of the features of these calculations. Such simplifications are acceptable as long as the two basic features of the distribution are preserved:

a.      that all members of the Settlement Class receive their share of the Net Settlement Fund based approximately on the formula referenced in Section 6.6 which calculates relative loss of Plan participants as compared with one another; and

b.      that the distribution takes place through the Plans or other appropriate trust account so as to maximize the tax advantages of investment in the Plans.

16

6.11    Promptly after calculating each Authorized Claimant's Settlement Claim, the Claims Administrator will provide to Defendants the name, social security number, and amount of each Authorized Claimant's Settlement claim, together with the total of all such Claims.  Except for the social security numbers, the same information will be provided to Class Counsel.

6.12    If you are a Class Member and you no longer participate in the Plans, depending on the size of your payment, you will either (i) receive a check made payable to you, or (ii) have the opportunity to receive a check made payable to you as above, or to receive a check payable to a qualified tax deferred account into which you desire to deposit your payment.  In either case, you will also receive any required tax forms, and, if eligible, information on depositing your payment into a qualified tax deferred account.

6.13    As promptly as possible after completion of all calculations in accordance with Section 6 herein, and upon authorization of the Court, the Claims Administrator, or its agents, will:

a.    for Authorized Claimants in each plan, provide to CVS an amount from the Net Settlement Fund equal to the proportionate share of the Plan Loss these Authorized Claimants' Settlement Claims represent for each Plan to the total Net Settlement Fund (within the parameters set forth at paragraph 6.1), with information sufficient to identify each Authorized Claimant and the appropriate amount and fund for distribution of each Settlement Claim amount.  CVS will be responsible, for the actual payment of each Settlement Claim amount into the proper Authorized Claimant's existing 401(k) and/or ESOPs account(s).  Such amount(s)  will be allocated to the Authorized Claimant's contribution source sub-account holding CVS Stock during the Class Period in accordance with the existing investment elections in effect for such sub-account, will be treated and administered

17

thereafter for all purposes under the Plans as income credited to the Authorized Claimant's contribution source sub-account under the Plans, and will thereafter be distributed only in accordance with the applicable provisions of the Plans; and

b.      for each Authorized Former Claimant, make payment as provided in paragraph 6.12 above.

6.14    The Claims Administrator will make available to Defendants' Counsel and Class Counsel any and all summaries, compilations, calculations, or tabulations of the claims and amounts described in this Section 6, upon the request of Defendants' Counsel, Class Counsel, or the Court

## 7.    **THE SETTLEMENT FUND AND THE PLAN ADMINISTRATORS**

7.1     The Parties will treat the Settlement Fund as a "qualified settlement fund" within the meaning of the regulations issued under Section 468B of the Code and any comparable provision of state or local law (collectively, the "Section 468B Regulations"). The Claims Administrator will be the "administrator" for purposes of the Section 468B Regulations. As such, it will comply with all of the requirements imposed on administrators by the Section 468B Regulations, including, without limitation, obtaining a taxpayer identification number for the Settlement Fund, preparing and filing all income tax returns and information returns required to be filed by the Settlement Fund and paying all taxes required to be paid by the Settlement Fund. CVS will be the "transferor" for purposes of the Section 468B Regulations. As such, it will comply with all of the requirements imposed on transferors by the Section 468B Regulations.

7.2     Each Authorized Claimant and Authorized Former Claimant will be solely responsible for the federal, state and local tax consequences to him, her or it of the crediting of an allocable share of the Net Settlement Amount to his, her or its plan account pursuant to Section 6

of this Agreement.  CVS will take the position for federal, state and local tax purposes that the amounts so credited are not reportable as income to the Authorized Claimants or Authorized Former Claimants until pay out occurs or the account is terminated under a plan, but no Defendant or Related Party will have any liability to any Authorized Claimant, Authorized Former Claimant or other Person (other than a taxing authority) if a taxing authority determines that CVS's position is incorrect.

7.3    The Claims Administrator will, in any event, remain available and be required to respond to inquiries from members of the Class regarding their Claims or any other aspect of this Agreement for six months after the Net Settlement Fund is distributed to Authorized Claimants.

7.4    The parties may apply to the Court to alter or amend the settlement administration terms of this Agreement at any time, or from time to time, provided, however, that no such amendment or modification will in any way affect: (a) the purposes of the Settlement Fund; (b) the Court's jurisdiction over the parties; (c) the powers, duties, and liabilities of the Administrators under this Order; (d) the total amount of money the Defendants are required to pay into the Settlement Fund; or (e) any material term of the Agreement.

## 8.    CORPORATE GOVERNANCE CHANGES RELATED TO THE ERISA PLANS

8.1    In accordance with the terms of this Agreement, the Audit Committee of the Board of CVS will receive periodic reports from the ERISA Plan Committee with respect to the fulfillment of the Plan Committee's Charter obligations.

8.2    In addition, the ERISA Plan Committee will adopt a Charter that specifically provides as its principal provisions that the ERISA Plan Committee will:

- administer, oversee and monitor the implementation and performance of the ERISA Plans in accordance with all applicable laws, rules and regulations;

- appoint necessary and appropriate designated ERISA Plan fiduciaries, including ERISA Plan Administrator(s) and Trustee(s), and oversee and monitor the activities of these ERISA Plan fiduciaries to ensure the effectuation of their responsibilities in accordance with standards of prudence;

- oversee the design and implementation of appropriate risk assessment systems, policies and procedures by these designated fiduciaries with respect to the implementation of the ERISA Plans;

- have available to it from the Company the financial and personnel resources and authority necessary and appropriate to permit it to discharge its duties and responsibilities (separate from routine administration functions presently paid for out of the Plan funds), including obtaining advice and assistance from internal and external counsel, accountants, auditors and other advisors or consultants as it may determine and select;

- be permitted to have up to two of its members attend meetings of the Audit Committee of the Board of CVS;

- oversee and monitor on an ongoing basis the effective design and implementation of systems, policies and procedures to ensure the review and assessment of ERISA Plan investment alternatives, administrative matters and disclosure issues in accordance with the legal obligations of plan fiduciaries, in the interest and for the benefit of the ERISA Plan beneficiaries;

- receive, review and assess reports, information and data necessary to ensure the ERISA Plan Committee's sufficient oversight of the operation of the ERISA Plans in conformance with its Charter. This shall include as appropriate attendance at meetings of the Audit Committee of the Board of CVS by up to two members of the ERISA Plan Committee;

- be able to retain, at CVS's expense, any and all experts and/or consultants it deems necessary to perform its functions and responsibilities;

- ensure access to Company financial and operational information necessary to permit it to reasonably and adequately assess the ERISA Plans' participation on an ongoing basis in the offering of Company common and/or preference stock as an appropriate investment option to ERISA Plan participants, including assessment of disclosure related thereto; and

- at least annually, to engage in a self-assessment of the ERISA Plan Committee's operations and functions and to provide, at least annually, to the Audit Committee of the Board, a report of the ERISA Plan Committee's activities and any issues arising therefrom.

A copy of the complete Charter of the CVS ERISA Plan Committee, as adopted pursuant to this Agreement, is provided at Exhibit 1 hereto.

## 9.    SUBMISSION TO JURISDICTION OF COURT

9.1    Each and every member of the Settlement Class and each and every Defendant submits to the jurisdiction of the Court and will be bound by the terms of this Agreement, including, without limitation, any and all releases, conditioned on the Final Approval of the Settlement and

subject to their right to object, as well as any other order of the Court including, without limitation, the Order and Final Judgment barring further litigation against any of the Released Persons on the Released Claims.

9.2     Each Class member specifically and personally submits to the jurisdiction of the Court.  Any and all disputes relating to claims that are not satisfactorily resolved by the Administrators will be submitted to the Court for final resolution.

## 10.    NOTICE TO MEMBERS OF THE SETTLEMENT CLASS

10.1     Within fourteen (14) days after entry of the Preliminary Approval Order, the Claims Administrator will send the Individual Notice by first-class mail, postage prepaid, to each member of the Settlement Class at the address(es) provided by the Defendants, or such other addresses as Plaintiff's Counsel have available.  Within seven (7) days thereafter, the Claims Administrator also will cause the Publication Notice, which is a summary form of the Notice that adequately informs the Settlement Class of the details of the Settlement and of their right to object thereto, to be published in *The Wall Street Journal*, or other national publications mutually agreed upon by Class Counsel and Defendants' Counsel.

## 11.    PROCEDURE FOR APPROVAL OF SETTLEMENT

11.1     As soon as practicable after execution of this Agreement, Class Counsel will file a motion with the Court seeking immediate entry of the Preliminary Approval Order and, after Notice is given to the Settlement Class, that a hearing be held by the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure on the fairness of the Settlement to the Class ("Settlement Fairness Hearing") and entry of the Order and Final Judgment approving the Settlement.

11.2    The Preliminary Approval Order proposed by the Parties and submitted with Plaintiff's motion for preliminary approval of the Settlement will:

a.    Give preliminary approval to this Agreement;

b.    Conditionally certify the Settlement Class for settlement purposes only pursuant to Rule 23(a) and b(1) and b(2) of the Federal Rules of Civil Procedure, appoint the Plaintiff as Class Representative, and appoint Plaintiff's Counsel as counsel for the Settlement Class;

c.    Approve the form of the Individual Notice, and direct the Claims Administrator within fourteen (14) days of the entry of the Preliminary Approval Order to send by first-class mail the Individual Notice to each potential member of the Settlement Class, and within twenty-one (21) days of the entry of the Preliminary Approval Order to publish the Publication Notice in *The Wall Street Journal* or other national publications mutually agreed upon by Class Counsel and Defendants' Counsel.

d.    Set a briefing schedule and a date and time for the Settlement Fairness Hearing to determine whether the Settlement is fair, reasonable, and adequate to the members of the Class, to determine Plaintiff's Counsel's Attorneys' Fees and Attorneys' Expenses, and to consider whether the Court should enter an Order and Final Judgment.  To the extent practicable these dates and/or times will be the same as those set for the Securities Action and Derivative Action;

e.    Set a deadline by which all objections to the Settlement must be made;

f.      Stay the Action until further order of the Court, and enjoin the filing or prosecution by any Class member of any actions based on or in any way related to the Released Claims until the Settlement Fairness Hearing; and

g.      Determine pursuant to Rule 23(c)(2) of the Federal Rules of Civil Procedure that the Notices constitute the best notice practicable under the circumstances and due and sufficient notice of the hearing and the rights of the members of the Class as to all Persons entitled to those Notices.

11.3    The Order and Final Judgment proposed by the Parties and submitted with Plaintiff's motion for approval of the Settlement will:

a.      Approve this Agreement and Settlement as a fair, reasonable, and adequate settlement, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and compromise of this Action, and direct payment of the Settlement Fund and compliance with all other terms of this Agreement;

b.      Certify the Settlement Class pursuant to Rule 23(a) and b(1) and b(2) of the Federal Rules of Civil Procedure;

c.      Dismiss the Amended Complaint and the Action against each of the Defendants with prejudice on the merits and without costs to any party;

d.      Terminate any and all of the Released Claims;

e.      Terminate any and all rights of the Defendants for reimbursement of their attorneys' fees in the Action;

f.      Bar and enjoin any action against Defendants, Defendants' Counsel, any member of the Settlement Class, or Class Counsel based on the amount of any Settlement

24

Claim issued pursuant to the Plan of Allocation approved in the Final Approval of the Settlement;

g.      Direct that each party will bear its own costs, to the extent not allocated in this Agreement;

h.      Reserve jurisdiction over this Action and over any and all further proceedings concerning the administration and consummation of the Settlement;

i.      Permanently bar and enjoin the Plaintiff, the ERISA Plans, the ERISA Plans' fiduciaries, all members of the Settlement Class and any other party from the institution or prosecution, either directly, indirectly, or in a representative capacity, of any other action in any court asserting any Released Claim against any Released Person; and

j.      Contain such other and further provisions consistent with the terms of this Agreement as the Court may deem advisable and appropriate.

## 12.    PLAINTIFF'S COUNSEL'S ATTORNEYS' FEES AND ATTORNEYS' EXPENSES

12.1    Plaintiff's Counsel will receive Attorneys' Fees and Attorneys' Expenses, with interest, as awarded by the Court ("Approved Attorneys' Fees").  Subject to there being no objectors to the Settlement, the Approved Attorneys' Fees will be paid to Plaintiff's Counsel out of the Settlement Fund within five (5) days of the entry of the Order and Final Judgment.  Plaintiff's Counsel will hold this money at their own risk pending the Final Approval of the Settlement, as defined at paragraph 3.20 herein.  Should the Final Approval of the Settlement not occur, Plaintiff's Counsel must return the amount of the Approved Attorney's Fees to CVS within five (5) days of notification of such failure to achieve Final Approval of the Settlement.  Plaintiff's Counsel will be solely responsible for allocating attorneys' fees among co-counsel, and Defendants will bear no

responsibility for this allocation, and will not be subject to suit under this Agreement or otherwise for the same.

12.2    Any Plaintiff's Incentive Award, as approved by the Court, will be paid to Plaintiff's Counsel out of the Settlement Fund within five (5) days following the Final Approval of the Settlement.  Plaintiff's Counsel will be solely responsible for directing the Plaintiff's Incentive Award to the Class Representative.

12.3    Defendants will not object to or oppose Class Counsel's application for an award of reasonable Attorneys' Fees and Attorneys' Expenses or Plaintiff's Incentive Award, and will take no position on the amount of such fees and expenses or award sought by Plaintiff or awarded by the Court except in the event Plaintiff seeks an award in excess of the amounts specified in paragraphs 5.2 and 5.3.  It is agreed that the allowance or disallowance (in whole or in part) by the Court of any application by Plaintiff's Counsel for an award of fees, expenses or by Plaintiff for Plaintiff's Incentive Award or Court ordered changes to the Plan of Allocation are not terms or conditions of the Settlement set forth in this Agreement, and any order or proceedings relating thereto, or any appeal from any such order, will not operate to terminate or cancel this Agreement.

## 13.    <u>RELEASE OF CLAIMS</u>

13.1    Upon Final Approval of the Settlement, the Plaintiff, the ERISA Plans, the ERISA Plans' fiduciaries, and all members of the Settlement Class will be deemed to have, and by operation of the Order and Final Judgment will have, fully, finally, and forever released and will be forever barred from the prosecution of any and all Released Claims against any and all of the Released Persons.

13.2    Upon Final Approval of the Settlement, Defendants will be deemed to have, and by operation of the Order and Final Judgment will have, fully, finally, and forever released, and are forever barred from the prosecution of, any and all rights for reimbursement of attorneys' fees or costs incurred in connection with the Actions, as against the Plaintiff, Plaintiff's counsel and all members of the Settlement Class.

13.3    The Release of Claims set forth in this Agreement will have no impact whatsoever on any amounts that are or could be sought or recovered in the Securities Action, and under no circumstances will the Settlement Fund or any Settlement Claim be applied as a set-off or credit against any judgment, recovery, or settlement obtained in the Securities Action, nor will it preclude the ERISA Plans, the ERISA Plans' Trustee or fiduciaries, or any individual member of the Settlement Class from participating as Class members in the Securities Action.

13.4    This Agreement will in no event be construed as or be deemed evidence of an admission or a concession on the part of any Party with respect to any claim, fault, liability, or damage whatsoever. The Defendants deny any and all wrongdoing of any kind whatsoever, and do not concede any infirmity in the defenses to the Action that the Defendants have asserted or intend to assert. The Defendants enter into this Agreement in order to avoid further expense, inconvenience, risk, and delay and to dispose of expensive, burdensome, and likely protracted litigation. The Plaintiff, the ERISA Plans and the Settlement Class also do not concede any infirmity in any of their claims against Defendants and enter into this Settlement Agreement in order to avoid further expense, inconvenience, risk, and delay and to dispose of expensive, burdensome, and likely protracted litigation.

13.5    This Agreement, whether or not consummated, and any proceedings taken pursuant to this Agreement, will not be construed as, or deemed to be evidence of, any presumption, concession, or admission by any of the parties of: (a) the truth of any fact alleged by Plaintiff or denial alleged by Defendants; (b) the validity of any claim or defense that has been or could have been asserted in the Action; (c) the existence or non-existence of any liability, breach of duty, prohibited transaction, violation of law, fault, wrongdoing, or other wrongful act of any of the Defendants; or (d) as evidence, a presumption, a concession, or an admission of any infirmity in any claim or defense of any of the parties.

13.6    This Agreement will not be construed as an admission or concession that the consideration to be given in Settlement represents the amount, if any, which could or would have been recovered after trial.

13.7    Plaintiff and CVS will each have the right to terminate this Agreement by providing written notice of their election to do so to all of the other parties hereto in the event that: (a) the Court declines to enter the Preliminary Approval Order or some other order containing or incorporating the terms herein; (b) the Court declines to enter the Order and Final Judgment or some other order consistent with the terms herein; or (c) the Order and Final Judgment approving settlement is modified or reversed in any material respect on appeal, reconsideration, or rehearing (provided, however, that any modification or reversal as to Plaintiff's Counsel's Attorneys' Fees or Expenses or Plaintiff's Incentive Award will not be deemed material for purposes of this paragraph). The parties agree that they will negotiate in good faith to preserve this Agreement prior to exercising their rights of termination under this paragraph.

13.8    In the event this Agreement is terminated, it will become null and void and of no further force and effect, the Parties will be deemed to have reverted to their respective status and positions as of the date immediately before the date of the execution hereof, and the Parties will proceed in all respects as if this Agreement had not been executed.  In the event of such termination, the funds paid into the Settlement Fund, plus interest earned thereon, less Administrative Expenses incurred as of the date of termination by the Claims Administrator will be returned to the entity that paid the funds.  If the Agreement is terminated, under no circumstances will Plaintiff, Class Counsel, or the Claims Administrator be required to reimburse Defendants for any Administrative Expenses already incurred as of the date of termination.  CVS will reimburse the Claims Administrator for all outstanding Administrative Expenses incurred up to the date of termination, and/or required to be incurred pursuant to such termination.

## 14.    COOPERATION OF THE PARTIES AND THEIR COUNSEL

14.1    The parties and their counsel agree to cooperate fully with one another to request Court approval of this Agreement, and to use their best efforts to effect and consummate the terms of this Agreement and the Settlement.

14.2    Before the Plaintiff or his counsel issue any press release relating to the Action or its resolution, the proposed press release will be given to CVS for approval.  The press release will not be issued unless CVS consents in writing to its issuance; CVS will not unreasonably withhold that consent.

## 15.    CLAIMS FILED IN THE SECURITIES ACTION

15.1    CVS, and the ERISA Plans commit for the benefit of the ERISA Plans and plan participants to actively pursue and timely file all required proofs of claim forms in connection with

the settlement of the Securities Action to recover all eligible losses suffered on all CVS stock purchased or otherwise acquired by or for the benefit of the ERISA Plans during the Class Period set forth in the Securities Action.  All recovery to plan participants pursuant to the Settlement of the present Action is made in addition to any recovery to the ERISA Plans in connection with the Securities Action.

**16.    GENERAL PROVISIONS**

16.1    This Agreement incorporates by reference all Exhibits attached to it.

16.2    This Agreement and the attached Exhibit 1, and Exhibits A through D, incorporated herein by reference, constitute the entire agreement of the parties and may not be modified or amended except by a writing signed by all parties.

16.3    The captions to this Agreement appear for the purpose of convenience only and have no legal effect.

16.4    Administration and consummation of the terms of this Agreement will take place under the supervision and authority of the Court, and all Parties hereto expressly consent to the jurisdiction of the Court for such purposes.

16.5    The Parties to this Agreement may execute this Agreement in any number of counterparts and on separate counterparts, each of which will constitute an original, but all counterparts together will constitute one and the same document.

16.6    Except insofar as federal law is controlling, this Agreement and all documents necessary to effect this Agreement will be governed by and construed in accordance with the laws of the State of Massachusetts.

16.7    Should any provision of this Agreement require judicial interpretation, the Parties agree that the Court or other adjudicating body will not apply a presumption that the terms be more strictly construed against the party who prepared same, it being agreed that all Parties collectively participated in the negotiation and preparation of this Agreement.

16.8    The Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Action.  The Parties reserve their right to freely rebut, in a manner that any such party determines to be appropriate, any contention made in a public forum to the effect that the litigation was brought or defended in bad faith or without reasonable basis.

16.9    Any notice required or desired to be given to any of the Parties to this Agreement will be delivered by overnight mail and facsimile transmission addressed as set forth in Exhibit C, or as may otherwise be designated by any party by written notice to the other Parties.

16.10    This Agreement will be binding upon and inure to the benefit of the Parties hereto, Related Parties, and their respective successors and assigns.

16.11    The undersigned are duly authorized to execute this Agreement on behalf of the parties they represent.

DATED: July 1, 2005

_____/s_____
Karen L. Morris
Patrick F. Morris
**MORRIS AND MORRIS LLC**
   **COUNSELORS AT LAW**
4001 Kennett Pike, Suite 300
Greenville, DE 19807
Telephone: 302-426-0400

_____/s_____
Deborah R. Gross (Bar #546151)
**LAW OFFICES**
**BERNARD M. GROSS, P.C.**
Suite 450 - John Wanamaker Bldg.
100 Penn Square East
Philadelphia, PA 19107
Telephone:  215-561-3600


_____/s_____
Bruce G. Murphy
**LAW OFFICES OF BRUCE G.**
   **MURPHY**
265 Llwyds Lane
Vero Beach, FL   32963
Telephone: 828-737-0500


**CO-COUNSEL FOR PLAINTIFF**




_____/s_____
Dennis E. Glazer
**DAVIS POLK & WARDWELL**
450 Lexington Avenue
New York, New York 10017
Telephone: 212-450-4000


**COUNSEL FOR DEFENDANTS**

32