# EXHIBIT 2

**DECLARATION OF MARK JOHNSON**

**I.    BACKGROUND**

1.        My name is Mark Johnson. I and my firm, ERISA Benefits Consulting, Inc. were retained by Plaintiff's Counsel in *Fescina v. CVS Corporation, et al.*, Civil Action No. 04-12309-JLT, presently pending in the United States District Court for the District Court of Massachusetts, to provide consulting services for this case.

2.        I earned a Ph.D. in Communication Studies at University of Massachusetts, and a Juris Doctor degree at University of Houston.

3.        I have extensive experience and expertise in the specialized areas of the administration and operation of pension funds under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§1001 et seq. ("ERISA"), and of ERISA-imposed fiduciary duties on plan administrators in connection with such administration and operation.

4.        My background includes serving as a plan manager and a fiduciary for several major 401(k) plans at American Airlines, a unionized Fortune 500 company, for seventeen years. In that capacity, I was responsible for performing all of the administrative and operational tasks required of the CVS Plan Committee, including, among others, the selection and monitoring of investment funds and investment options offered to plan participants. As such, I am qualified to opine on the value and impact of the governance changes at issue in the proposed settlement.

5. Since founding ERISA Benefits Consulting in 2002, in addition to the CVS matter, I have acted as a consulting or testifying expert in six other 401(k), 401(k)/ESOP or profit sharing fiduciary liability litigations in cases in federal courts around the country.

6. My resume is attached at Exhibit A to this Declaration.

## II. SCOPE OF MY RETENTION

7. Pursuant to my retention, I was actively involved in advising Plaintiff's Counsel on ERISA-related issues, including plan administration, governance and fiduciary conduct. As such, I provided advice in connection with the provisions of the Settlement Agreement between the parties relevant to the governance changes to be adopted by CVS pursuant to the proposed Settlement. One principal aspect of these governance changes is the adoption by the Company of the CVS ERISA Plan Committee Charter.

## III. THE SETTLEMENT IMPOSES IMPORTANT AND CUTTING EDGE ENUMERATED GOVERNANCE OBLIGATIONS ON THE PART OF THE CVS PLAN COMMITTEE

8. Prefatory to offering my assessment of the scope, nature and value of the Plan Committee Charter to CVS plan participants, I offer the following general observations. ERISA plan sponsors under the statute have wide latitude in establishing internal reporting and governance structures for their plans. Plan sponsors -- usually (as the case here) the employer -- are always a fiduciary. While ERISA plans have adopted and pursued many different reporting and governance structures, they routinely have one major precept in common. Plans generally provide broad delegations of authority, including discretionary and interpretative authority, to committees and/or individuals, with few if any enumerated tasks or responsibilities regarding the execution of that authority.

9.      Illustrative of this fact is the language of the CVS 401(k) Profit Sharing Plan relevant to the allegations of the Amended Complaint, which provided, for example, broadly at paragraph 10.02 that "The Committee shall administer the Plan in accordance with its terms and *shall have all powers necessary to carry out the provisions of the Plan* not otherwise reserved to the Company, the Employer, the Board of Directors, or the Trustee" (emphasis added), and at paragraph 10.08 "Prudent Conduct," that "The Committee shall use that degree of care, skill, prudence and diligence that a prudent man acting in a like capacity and familiar with such matters would use in his conduct of a similar situation."

10.     One pervasive operational risk inherent is such broad and general delegations of authority is that it is not formal or structured, and as such, is highly dependant on the personalities, abilities, training and interests of the plan administrators and/or committee members in place at any given point in time. While such a structure is not inherently bad, if it lacks formal, enumerated responsibilities and obligations and/or specific upstream reporting requirements, it can prove problematic over time. The dramatic increase in ERISA plan losses and total failures at major and mid-stream companies in recent years has helped to bring into sharp focus the essential role ERISA fiduciaries must play in the safe and effective administration of these plans.

11.     In my opinion, one critical tool in ensuring this increased focus is to impose specific oversight and monitoring responsibilities over the operation and administration of ERISA plans to the persons tasked with running them -- the plan fiduciaries.

12.     The proposed CVS ERISA Plan Committee Charter (found at Section 8 of the Settlement Agreement) directly addresses these concerns by imposing specific duties and

reporting paths on the Plan Committee. Imposing these responsibilities at the Plan Committee level will reasonably act to help internalize them at the Company. CVS's 401(k) Plan document specifies that the Plan Committee will consist of at least three individuals directly appointed by the Board, and is responsible for the administration and supervision of the Company's ERISA plan. The Plan Committee thus plays a critical role in the safe and efficient operation of the ERISA Plans at CVS.

13.     In my opinion, the proposed Charter reflects an important concept often not recognized by ERISA plans around the country, namely that the decision to offer company stock as an investment option in an ERISA plan triggers exactly the same fiduciary duties and responsibilities as offering any other investment option. The proposed Plan Committee Charter reflects a clear recognition of this fact at both the plan management and Board of Directors levels of the Company, in that it imposes specific responsibilities in several critical areas, including: (i) the design and implementation of compliance and risk management systems, policies and procedures; (ii) assuring that Plan Committee members are fully informed of all operational and financial information necessary to permit them to fulfill their fiduciary duties; and (iii) self-assessment and reporting obligations to the Audit Committee of the Board of Directors. I will discuss each of these areas separately below.

    **A.   The Design and Implementation of Compliance and Risk Management Systems, Policies and Procedures**

14.     The proposed Charter imposes on members of the Plan Committee the responsibility to oversee the design and implementation at CVS of adequate and effective oversight systems, policies and procedures related to compliance oversight of critical aspects of

Plan administration, including the determination of investment alternatives, plan administrative matters and disclosure issues.

15. Plan Committee members are also specifically tasked with responsibility to oversee the design and implementation of adequate and effective risk assessment systems, policies and procedures applicable to the ERISA Plans.

16. As commonsense dictates, having effective and pro-active compliance and risk management oversight and monitoring systems, policies and procedures in place and under the direct control and responsibility of the Plan Committee provide essential tools to these plan fiduciaries. Effective compliance oversight is essential to permitting plan fiduciaries to track how the ERISA plans are being administered, and whether critical safeguards are in place and being followed in connection with such administration. One principal area where having effective compliance oversight and monitoring systems in place is directly relevant to the issues raised in the present ERISA litigation is in connection with the on-going assessment of the propriety and advisability of offering -- and continuing to offer CVS stock in the future as an investment option to plan participants.

17. Risk management is a burgeoning area of corporate governance in corporate America. The concept behind risk management is that the entity sets up effective systems that allow it to reasonably evaluate and respond to areas of future potential risk to the operations of the entity -- in this case the ERISA plans -- based on regulatory, operational or fiduciary factors. The successful design and implementation of risk management systems can provide a critical tool for uncovering potential problem areas in a timely manner and responding to them before they rise to the level of litigation and regulatory investigations.

18.     In my opinion, imposing the responsibilities to ensure that adequate compliance and risk management procedures and systems are in place at CVS to oversee the activities of the ERISA plans provides important tools to plan fiduciaries to enable them to pro-actively monitor and track these critical areas, allowing for better and more timely decision making on behalf of the ERISA Plans going forward.

    **B.     Assuring Plan Committee Members are Fully Informed of all Necessary Operational and Financial Information**

19.     Plan fiduciaries cannot make appropriate decisions regarding the administration and operation of ERISA plans, including the decision of whether to offer -- or continue to offer -- company stock as an investment option under the plans in light of changing circumstances at the Company unless they are kept informed of those changing circumstances as they occur. Timely and complete information flow to plan fiduciaries is critical to their ability to adequately perform their fiduciary duties to the plan and plan participants. With that key precept in mind, the Plan Committee Charter provides certain specific powers to committee members, and also imposes certain enumerated duties on them.

20.     To help ensure Plan Committee members are fully informed of current financial and operational conditions at the Company, the Charter specifically empowers Committee members with, among others, the right to attend meetings of the Audit Committee of the Board and direct access to all reports, information and data necessary to ensure they can effectively perform their duties.

21.     In addition, the proposed Charter grants the Plan Committee the power to retain (at CVS's expense) any experts or consultants they deem necessary or helpful to their performance of their functions and responsibilities as plan fiduciaries. I noted that the 401(k)

Profit Sharing Plan already provided at paragraph 10.02 that the Plan Committee "may retain counsel, employ agents and provide for such clerical, accounting, and consulting services as they may require in carrying out the provisions of the Plan." Specifying under the proposed Charter that the costs of such retention will be treated as an expense of the Company and *not* of the plans (and thus, indirectly, of plan participants) constitutes an important additional benefit.

22.     The above-listed important powers create a direct corresponding obligation on the part of committee members to ensure they obtain on on-going basis adequate information to fully assess the plans' operations, administration and investment options to ensure all fiduciary decisions they make with respect to the plans are informed and in the plans' best interests.

### C. Specific Self-Assessment and Reporting Obligations to the Audit Committee

23.     The proposed Charter further imposes on Plan Committee members the requirement to at least annually undertake a self-assessment of the Committee's operations and functions, and to report on the Committee's activities and any issues arising from them to the Audit Committee of the Board. This requirement is vital because it imposes on committee members the obligation going forward to continually assess and improve the systems and procedures they designed and implemented, and acts to periodically reinforce to them the importance of these policies, procedures and systems to the smooth, safe and effective operation and administration of the ERISA plans.

24.     This obligation, combined with the requirement to attend meetings of the Audit Committee of the CVS Board, as appropriate, will, in my expert opinion, reasonably facilitate important and effective lines of communication between the Audit Committee -- and through it, to the entire Board at CVS -- and the fiduciaries specifically tasked by the Board to administer

and oversee CVS's ERISA Plans. This form of check and balance between the Plan Committee and the Audit Committee -- with the concomitant recognition of direct responsibility over and "ownership" of the ERISA Plans at the Company -- offer an effective safeguard.

IV.   **AUDIT COMMITTEE OVERSIGHT OF THE CVS ERISA PLANS**

25.         As a final, but highly important provision of the governance changes at CVS to be adopted and imposed pursuant to the proposed settlement, this above-discussed "tie-in" between the Plan Committee and the Audit Committee is further reinforced and enumerated by the provision at Section 8.1 of the Settlement Agreement that the Audit Committee of the Board assumes oversight responsibility over the performance of the Plan Committee in the execution of its enumerated duties and responsibilities under the Charter. The Settlement thus assures at the CVS Board level a degree of plan oversight which ERISA plans around the country more commonly leave to the Chief Financial Officer.

V.   **IMPLEMENTATION OF THE GOVERNANCE CHANGES EMBRACED IN THE PROPOSED SETTLEMENT WOULD EFFECTIVELY MAKE CVS "BEST-IN-CLASS"**

26.         In my opinion, to meet the obligations imposed on CVS under the proposed Charter, the systems, policies and procedures the Plan Committee will design and implement will reflect critical elements of a 'best-in-class' compliance and risk management system.

27.         Pursuant to the Settlement Agreement, the Plan Committee has been tasked with enumerated oversight and monitoring responsibilities for the investment function and administration of the ERISA Plans, and has been expressly assured access to all necessary information and resources on a continuing basis going forward to assess plan operations and investment options -- in particular in connection with the offering of CVS stock.

28.     As a professional with over 20 years experience in this area, I wholeheartedly endorse the governance changes agreed to by CVS pursuant to the proposed settlement. As detailed above, their formal adoption through the implementation of the settlement provides meaningful and cutting edge protections to ERISA plan participants, and would impose real and important enumerated duties and obligations on the principal fiduciaries of the CVS ERISA plans -- the Plan Committee -- of a virtually unprecedented nature among ERISA settlements in recent years around the country.

29.     I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 26th day
of August, 2005

_____/s_____
Mark Johnson

# EXHIBIT A

**Mark Johnson**      1450 Hughes Road, Suite 120, Grapevine TX 76051
markjohnson@erisa-benefits.com • Direct 817-909-0778 • FAX 817-788-1399

## PROFESSIONAL PROFILE

A 20 year career bridging 4 closely related areas: ERISA, the management/financing of pension, 401(k), group life & health and retiree medical plans, labor relations and personnel policy. This experience includes serving at the director level with operational and financial responsibility for 20 qualified plans; negotiating pension and benefit plans with 5 unions; chief ERISA compliance officer; presentation of arbitration cases, EEOC proceedings, and federal and state court litigation.

## MAJOR ACCOMPLISHMENTS

- Member of the negotiation and implementation teams for corporate development projects - acquisitions and divestitures.
- Designed and implemented pension plan conversions, "choice" and mandatory programs, for union and non-union employees.
- Responsible for an operating budget of $5 million; annual pension expense of $300-$400 million, and actuarial projections.
- Managed 12 direct reports, staff of 50, plus contractors and outsourced employees.
- Negotiated group life and health, disability, pension and 401(k) plans with 5 unions.
- Designed and implemented early retirement bridge programs and voluntary severance plans.
- Directed ERISA appeals process with delegated authority to decide all pension, 401(k) and group life and health plan appeals, approximately 300 cases per year.
- Presented 23 labor arbitration cases.
- Represented employers before the NLRB, EEOC and state human rights commissions.
- Established new benefit and pension/401(k) plans for acquisitions and business unit spinoffs.

## KEY QUALIFICATIONS

- Significant planning, managerial, operational and legal background in all aspects of human resources including employment/personnel policy, benefits, compensation and labor relations.
- Extensive labor relations experience, including arbitration and mediation.
- Board Certified Labor and Employment Law Specialist, Texas Board of Legal Specialization.
- Financial/Accounting/Actuarial analysis and planning skills.

## EMPLOYMENT HISTORY

*October 2001 to*       Erisa Benefits Consulting

*Present*

Benefits, pension and 401(k) consulting, professional education, advice, and research on, benefit plan design, operation, interpretation and compliance, litigation support, expert testimony, labor relations..

Clients include: AT&T, American Airlines, MorganStanley, Ariel Capital Management, ANBFinancial, Medidigms, TowersPerrin, Moore & VanAllen, Carrington & Coleman, Whatley & Drake, Texas Department of Insurance, Branstetter, Kilgore, Stranch & Jennings, Derryberry & Zips, The Atkins Law Firm, Ellis, Young & Tidwell, Morris, James, Hitchens & Williams, LLP.

*August 2002 to Present*

Tarrant County College          Hurst, Texas

**Adjunct Professor of Business Communication**

*May 1995 to October 2001*

American Airlines          Ft. Worth, TX

**Managing Director, Benefits Compliance & Pensions**
The Benefits Administration Department was merged with Benefits Compliance. New areas of responsibility included planning, policy and operation of all pension/401(k) plans and shared responsibility for executive and group life and health plans.

*August 1992 to June 1995*

American Airlines          Ft. Worth, Texas

**Counsel, Benefits Compliance**
Supervised a staff of 10 with the responsibility to ensure the compliance of all benefit and pension plans with ERISA and applicable state law; including all reporting and disclosure, government filings, audits, benefit planning and analysis, labor negotiations and support.

*September 1987 to August 1992*

American Airlines          Ft. Worth, Texas

**Attorney**
Provided advice and counsel on benefits, employment and labor relations issues.

*August 1983 to September 1987*

Southwestern Bell Corporation          Houston, Texas

**Attorney**
Litigation of claims by and against the company, predominantly employment

issues; advice and counsel on labor relations and employment law.

| | |
|---|---|
| *January 1985 to*<br>*May 1986* | University of St. Thomas, Houston, Texas<br>**Adjunct Professor of Communication** |
| *January 1982 to*<br>*June 1983* | University of Houston, Downtown College, Houston, TX<br>**Adjunct Professor of Communication** |
| *August 1980 to*<br>*June 1981* | Texas Wesleyan College, Fort Worth, Texas<br>**Associate Professor of Communication** |
| *August 1979 to*<br>*June 1980* | Mount Vernon College, Washington, D.C.<br>**Associate Professor of Communication** |
| *August 1976 to*<br>*August 1979* | University of Houston, Houston, Texas<br>**Assistant Professor of Communication** |

**EDUCATION**

| | | |
|---|---|---|
| *August 1983* | University of Houston<br>**J.D., Law**<br>Cum laude, Houston Law Review, Order of the Barrons | Houston, Texas |
| *September 1976* | University of Massachusetts<br>**Ph.D, Communication Studies, Minor: Statistics** | Amherst, MA |
| *February 1973* | University of Massachusetts<br>**M.A., Mass Communication** | Amherst, MA |
| *May 1971* | University of Massachusetts<br>**B.A., History** | Amherst, MA |